[Civ. No. 15774.   Second Dist., Div. Two.   July 15, 1947.]

A. H. PETERSON, Appellant, v. CALIFORNIA SHIP-BUILDING CORPORATION et al., Respondents.

J. Paul Madsen for Appellant.

Thelen, Marrin, Johnson & Bridges and Thomas R. Suttner for Respondents.

WILSON, J.—This action involves the construction of the terms of an employees' profit sharing trust created by respondent California Shipbuilding Corporation, known as Calship Employees' Benefit Fund. Appellant seeks to enforce his claim to benefits which he asserted under the declaration of trust and which were denied by respondents, the corporation and the trustees of the fund. Their demurrer to the amended complaint was sustained with leave to amend. Appellant refused to amend further. A judgment of dismissal followed, from which this appeal was taken.

Respondent corporation established a trust under date of November 30, 1942, for the benefit of its executive, administrative or professional employees who were paid on a fixed salary basis and not an hourly rate with overtime and who were exempt from the coverage of the Federal Fair Labor Standards Act of 1938. (29 U.S.C.A. §§ 201-219.) The general provisions of the trust agreement material to this action are as follows:

1. Every employee not entitled to compensation for overtime would become a qualified participant in the fund upon completion of six months' service.

2. An annual contribution to the fund would be made by the trustor on or before November 30th, of each year. This would amount to either 5 per cent of the net profits realized for the fiscal year ending each such November 30th, or 15 per cent of the basic compensation otherwise paid during such year to all members of the benefit fund, but not more than the latter. No contributions were made by the employees.

3. At the end of each payroll year the money paid into the trust would be apportioned to the account of each member

employee on a percentage ratio established by dividing the base pay of the employee by the aggregate total base pay of all employees for the payroll year.

4. Payments from the fund to the members were to be made as follows: (a) Upon death while a member all amounts credited to the member's account would be paid to his personal representative. (b) Upon becoming incapacitated for six consecutive months the entire account could be withdrawn. (c) Upon induction into the armed services of the United States the entire account could be withdrawn. (d) If a member ceased to be an employee less than one year after becoming a member of the fund he received 25 per cent of all amounts credited to his account at the time of the termination of his employment. (e) If a member ceased to be an employee more than one but less than three years after becoming a member of the fund he received 50 per cent. (f) If a member ceased to be an employee more than three but less than five years after becoming a member of the fund he received 75 per cent. (g) An employee who quit after five years' employment was entitled to receive his entire account. (h) Member employees whose employment was terminated because of cessation or substantial curtailment of shipbuilding operations would receive their entire accounts.

Appellant was a salaried employee of the corporation continuously from September 22, 1941, to January 31, 1945, in the capacity of assistant superintendent of machinery in the construction of ships for the United States Government. He voluntarily terminated his employment on the latter date after having been employed more than three years, but less than three years after he became a member of the fund by virtue of the trust agreement of November 30, 1942.

Appellant alleges that respondents credited benefits to the account of appellant for and during the payroll years ending on the 30th day of November in each of the years 1942, 1943 and 1944, in the total sum of $1,546.41, 50 per cent of which, amounting to $773.21, was paid to him. He contends that he is entitled to the remaining 50 per cent of the amount and respondents maintain that by reason of his employment for less than three years after having become a member of the fund he has been paid his full due.

Appellant has attempted to bring himself within the provisions of subsections 4(c) and 4(h) of the trust agreement above outlined by alleging that on January 31, 1945, he "quit his said employment" with respondent corporation "because

of great and substantial curtailment in said defendant's ship-building operations and because of plaintiff's belief and expectation at the time of an early and sudden cessation of such shipbuilding operations," and that he immediately enlisted, entered and enrolled in the United States Maritime or Merchant Marine Service in which he remained until the commencement of this action.

He does not allege the extent of the curtailment of respondent corporation's operations nor does he allege any facts from which the court may determine whether such curtailment, if any, was substantial. He was not discharged by his employer because of the lessening of its ship construction but he seems, according to the allegations in the amended complaint, to have determined in his own mind that the curtailment was sufficient to warrant the voluntary termination of his employment. But for his action, taken at his own election unsupported by any suggestion from the corporation that the work was growing less and that there was a possibility of his discharge, he might yet be in the same employment, building up benefit credits to which he would be entitled by his years of service. His personal expectation of future conditions was insufficient to furnish a reason for his leaving his employment.

The trust agreement provides that if because of substantial curtailment of shipbuilding operations member employees cease to be employees of the corporation, then as to member employees "whose employment *is terminated*" by reason of such curtailment such employees shall be entitled to receive all amounts credited to their respective accounts. This provision does not mean those employees who voluntarily leave, that is those who terminate their own employment, but it refers to those who are required by the employer to quit—those whose employment *is terminated* at the direction of others. His claim is therefore unsupported by subdivision 4(h).

Subdivision 4(c) likewise fails to give sustenance to appellant's alleged cause of action. The Merchant Marine is not a part of the armed forces of the United States and appellant's entry therein was not an "induction into the armed services" which is designated as one of the circumstances under which he would be entitled to withdraw the entire amount credited to him. (*McCune* v. *Kilpatrick*, 53 F.Supp. 80, 88. See, also, *In re Berue*, 54 F.Supp. 252, 255.)

Appellant alleged that respondent corporation agreed to contribute to the benefit fund for the fiscal year ending

November 27, 1943, between 2 per cent and 5 per cent of its income before provision for federal taxes based on income, and for each of the fiscal years ending November 30, 1944, and November 30, 1945, respectively, a sum equaling 5 per cent of the net profits of the corporation for each such fiscal year before provision for income taxes, but said contributions in no event to exceed 15 per cent of the basic compensation paid during such year to all employee members of the benefit fund. He further alleged that the exact amount of the income or net profits of the corporation or of the basic compensation paid to employees during the existence of the trust or during the period of his employment were unknown to him and on information and belief alleged that the corporation did not contribute between 2 per cent and 5 per cent of its income for the fiscal year ending November 27, 1943, nor 5 per cent of its net profits for the years 1944 and 1945. On these allegations he asks that the corporation be required to disclose the amount of its income and net profits for the respective years mentioned. In his pleading appellant alleged that the contribution should not exceed 15 per cent of the basic compensation paid to employee members of the fund, this being the limitation provided in the trust agreement. While he alleged that the corporation failed to contribute between 2 per cent and 5 per cent of its income or 5 per cent of its net profits he did not allege that the amount contributed was not equal to the 15 per cent limitation and in this respect the amended complaint is deficient.

Appellant was not entitled to any portion of the benefit fund in the fiscal year ending November 30, 1945, although he asserts a right to his proportion thereof that accumulated between November 30, 1944 and January 31, 1945, the date on which he terminated his employment. The trust agreement provided that contributions paid into the trust for each year "shall be distributed among the member employees *as of the end of such pay roll year pro rata* on the basis of the basic compensation paid to such employee during such pay roll year." Since appellant was not an employee of the corporation on November 30, 1945, the end of the fiscal year, he was not a member of the fund on that date and therefore has no right to participate in the fund.

Judgment affirmed.

Moore, P. J., and McComb, J., concurred.