[Civ. No. 52791. Second Dist., Div. Five. Jan. 25, 1979.]

DIVISION OF LABOR LAW ENFORCEMENT,
Plaintiff and Respondent, v.
TRANSPACIFIC TRANSPORTATION COMPANY,
Defendant and Appellant.

824

**COUNSEL**

Frolik, Filley & Schey and Walter M. Schey for Defendant and Appellant.

Marilyn Shinderman, Gerald Friedman, Arthur Stahl, Lelia Jabin and Laurence T. Emert for Plaintiff and Respondent.

## OPINION

**ASHBY, J.**—Defendant Transpacific Transportation Company appeals from the judgment in favor of plaintiff Division of Labor Law Enforcement, the assignee of the claims of various former employees of defendant for wages due.

The findings of fact and conclusions of law relevant to this appeal are as follows: Defendant is a steamship agency company which employed 43 persons in its Los Angeles office in mid-1970. Defendant's largest client, Japan Line, which then accounted for 65 to 70 percent of defendant's activity, advised defendant that Japan Line would open its own Los Angeles office on December 1, 1970, and that the agency relationship with defendant would terminate at that time. In August 1970 defendant advised its employees that the work force would have to be reduced, that many of the employees would no longer have jobs with defendant after November 30, 1970, and that many of the employees could work for Japan Line.

On November 30, 1970, defendant's staff was reduced by 26 people. The employees who were *not* terminated received bonuses on December 15, 1970, of 10 percent of their 1970 earnings. None of the employees who were terminated on November 30, including plaintiff's assignors, received bonuses.

At the time each of plaintiff's assignors had been hired by defendant, each was told that in the past an annual bonus had been paid to employees and that it normally amounted to 10 percent of annual salary. No conditions were stated to the employees at the time of hiring that the employee had to be on the payroll at the time the bonus was paid in order to receive it. No contingency for the payment of the bonus was stated except that the company be able to pay it, and there was no evidence that the company could not have afforded to pay it in 1970.

Defendant had paid a bonus based on a percentage of salary every year since 1941. From 1952, the percentage was 10 percent of annual salary for nonmanagement employees, such as plaintiff's assignors. The bonuses were not limited to employees who had worked for the entire calendar year; bonuses were paid to employees who had commenced working for defendant in the middle of the year or even in the last quarter of the calendar year. The usual deductions of social security, state disability

insurance, and withholding tax were taken from the annual bonuses. Defendant maintained a monthly nonfunded contingency account for bonuses based on 9 to 10 percent of the total salaries paid to employees. The bonuses were paid in December. Defendant's fiscal year ended on November 30.

Each of plaintiff's assignors knew of defendant's past history of paying an annual bonus based on a percentage of the employee's annual earnings. Each who had been employed prior to 1970 had received a 10 percent bonus in previous years.

Defendant's agency agreement with Japan Line was in effect until the end of defendant's fiscal year of November 30, 1970, and until that date defendant needed the employees represented by plaintiff to provide the services required by the agreement. Defendant benefited from low turnover of its employees because the nature of its business required special knowledge of shipping which necessitated expense and time in training new employees.

The trial court concluded that defendant by its representation and conduct induced plaintiff's assignors to believe that an annual bonus would be paid, that said representation and conduct were material inducements to plaintiff's assignors to accept employment and remain in defendant's employ, and that plaintiff's assignors relied upon such representations and conduct and upon the payment of an annual bonus. The court concluded that defendant is estopped by its conduct from denying a promise to plaintiff's assignors to pay a bonus for the year 1970.

### PRIOR HISTORY OF THIS CASE

This is the second time this matter has been before this court. Previously the trial court had rendered a judgment in favor of defendant, finding that defendant "neither expressly nor impliedly promised any of the assignors that it would at any time pay a bonus." On appeal from that judgment, in 2d Civil No. 45798, we held that although the evidence supported a finding of no express or implied promise to pay a bonus, the fourth cause of action had adequately pleaded an estoppel in pais or estoppel by conduct. We held that since the trial court had never made factual findings upon that theory, the judgment must be reversed so that factual findings could be made. (*Division of Labor Law Enforcement* v.

*Transpacific Transportation Company,* 2d Civ. No. 45798, filed May 6, 1976, not for publication in the Official Reports.)

On remand, the trial court made the additional findings of fact recited above. These findings were in favor of plaintiff on the estoppel theory, and thus on remand, judgment was for plaintiff.

■ Therefore, at this stage of the case, it is important to bear in mind that the findings in favor of plaintiff on the estoppel theory are entitled to the usual presumptions on appeal in favor of the judgment. That is, the judgment in favor of plaintiff must be upheld if there is any substantial evidence to support the findings; we must view the evidence in the light most favorable to this judgment and resolve all conflicts in the evidence and questions of credibility of witnesses in support of the trial court's findings. (*Stevens* v. *Parke, Davis & Co.,* 9 Cal.3d 51, 64 [107 Cal.Rptr. 45, 507 P.2d 653]; *Foreman & Clark Corp.* v. *Fallon,* 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362].) The fact that the previous judgment, now vacated, was for defendant on the theories of express or implied promise is incidental, since the court in the previous proceeding failed to reach the issue of estoppel by conduct.

### SUFFICIENCY OF THE PLEADING

We stated in the prior opinion that the plaintiff raised two basic theories in its amended complaint, one based upon a promise and another which "involves the conduct of respondent and the reliance by employees on that conduct. In other words, the second theory would constitute estoppel in pais or estoppel by conduct." (2d Civ. No. 45798 at p. 9.) (See generally *City of Long Beach* v. *Mansell,* 3 Cal.3d 462, 488 [91 Cal.Rptr. 23, 476 P.2d 423]; *Driscoll* v. *City of Los Angeles,* 67 Cal.2d 297, 305 [61 Cal.Rptr. 661, 431 P.2d 245]; *Baillargeon* v. *Department of Water & Power,* 69 Cal.App.3d 670, 678-679 [138 Cal.Rptr. 338].) Defendant urges us to re-examine that holding. ■ Defendant claims that the theory of estoppel by conduct was not raised by plaintiff's amended complaint, and therefore never should have become an issue upon the prior appeal or remand. We disagree. Plaintiff's fourth cause of action set forth a course of conduct by defendant and reliance by plaintiff's assignors upon that conduct. It is not necessary that the word estoppel be used in the pleading. Estoppel may be properly pleaded so long as the complaint sets forth the course of conduct upon which it is based. (*Carpy* v. *Dowdell,* 115 Cal. 677, 688 [47 P. 695]; *Beardsley* v. *Clem,* 137 Cal. 328, 331-332 [70 P. 175]; *Burrow* v. *Carley,* 210 Cal. 95, 103-104 [290 P. 577].)

The amended complaint was sufficient to raise the theory of estoppel by conduct.

Defendant had a San Francisco office which also reduced its work force upon the termination of the agency agreement with Japan Line, without paying the bonus. The Division of Labor Law Enforcement brought a similar action in San Francisco on behalf of the San Francisco employees, and that case led to a published appellate opinion, *Division of Labor Law Enforcement* v. *Transpacific Transportation Co.,* 69 Cal.App.3d 268 [137 Cal.Rptr. 855], by the First Appellate District, Division Two, which affirmed a trial court judgment in favor of defendant. That opinion was filed April 25, 1977, subsequent to our first opinion filed May 6, 1976, in 2d Civil No. 45798. The first district court held that plaintiff's fourth cause of action was for *promissory* estoppel, and that such cause of action failed in view of the trial court's finding that no promise had been made. Defendant cites the San Francisco case in support of its argument that promissory estoppel, not estoppel in pais or estoppel by conduct, is the "true" theory in the instant matter. The San Francisco case is not determinative. Promissory estoppel, and estoppel by conduct are two entirely distinct theories. The latter does not require a promise. (7 Witkin, Summary of Cal. Law (8th ed. 1974) Equity, §§ 131, 132; 1 Witkin, *id.,* (8th ed. 1973) Contracts, §§ 189, 190.) The San Francisco opinion does not address itself to a possible theory of estoppel by conduct. The fact that the fourth cause of action was sufficient to raise the theory of promissory estoppel does not make it insufficient to raise the theory of estoppel by conduct.

### SUFFICIENCY OF EVIDENCE

■ Defendant next contends that the evidence is insufficient to support the judgment. In this respect defendant bears the heavy burden of showing that there is no substantial evidence whatsoever to support the trial court's findings. (*Foreman & Clark Corp.* v. *Fallon, supra,* 3 Cal.3d 875.) Defendant points to various items of evidence from which inferences might be drawn in defendant's favor, but often ignores contrary evidence and inferences which the trial court was entitled to draw. (See *Kanner* v. *Globe Bottling Co.,* 273 Cal.App.2d 559, 564 [78 Cal.Rptr. 25].) We find defendant's arguments to be without merit.

Defendant assumes that it is crucial to the judgment that plaintiff's assignors worked through the fiscal year which ended November 30, and

then argues that the bonus had nothing to do with the fiscal year and therefore was not payable. This argument is not persuasive. Since defendant's witnesses themselves claimed that the bonus was contingent upon the worldwide earnings of the corporation, and the bonuses were always paid shortly after the close of the November 30 fiscal year, it is reasonable to assume that the bonus depended in part upon the showing the company made in the just completed fiscal year. Defendant next quibbles with the finding that there is no evidence defendant could not afford to pay the bonuses to plaintiff's assignors. Defendant argues that since the largest client had just been lost, defendant could only afford to pay the remaining employees. There was no evidence to support such assertion, and the contrary conclusion is quite reasonably drawn from the evidence. Japan Line was not lost as a client until the close of the fiscal year, and thus the financial position of the company would reflect the earnings from that client through November 30. Furthermore, defendant's witness testified that the bonuses were contingent upon the worldwide operation of the parent Dutch corporation, not the particular operations in defendant's office. It belies common sense to conclude that defendant was unable to pay the bonus to plaintiff's assignors while able to pay it to the remaining employees.

Defendant argues that employees were required to be on the payroll at the time the bonus was paid. This was an unusual situation, however, where the employees were laid off through no fault of their own, rather than leaving voluntarily or being discharged for cause. From the evidence that defendant paid bonuses to employees who began employment in the middle of the year, or even near the end of the year, the court could reasonably conclude that defendant equitably is required to pay pro rata bonuses to the discharged employees in these circumstances. In effect, defendant argues that although the employees who remained on the payroll two weeks longer than plaintiff's assignors were entitled to a bonus, plaintiff's assignors forfeited their benefits. The law does not support a forfeiture in these circumstances where the employees were terminated through no fault of their own after having substantially performed the services entitling them to a bonus. (*Div. of Labor L. Enf.* v. *Ryan Aero. Co.,* 106 Cal.App.2d Supp. 833, 835 [236 P.2d 236, 30 A.L.R.2d 347]; see *Posner* v. *Grunwald-Marx, Inc.,* 56 Cal.2d 169, 186-187, 189 [14 Cal.Rptr. 297, 363 P.2d 313].)

Defendant contends that two of plaintiff's assignors voluntarily chose to work for Japan Line even though defendant offered to retain them, and that these two employees should not qualify for recovery. However,

the evidence indicates that defendant left its employees in a great deal of uncertainty as to which ones would be retained, and if the two employees in question made commitments to Japan Line during this period of uncertainty, the trial court could reasonably conclude it should not be held against them.

Finally, defendant contends that the element of reliance was not proved. Apparently defendant's position is that it was incumbent upon each of plaintiff's assignors to testify that, were it not for the belief that he would be entitled to a bonus, he would have left defendant's employ or would never have begun working for defendant in the first place. We disagree. In matters of employment relationships such as this, the courts may make reasonable inferences from the realities of the marketplace concerning the inducement and reliance of employees upon the benefits offered by the employer. (See cases cited in *Hepp* v. *Lockheed-California Co.,* 86 Cal.App.3d 714, 718-720 [150 Cal.Rptr. 408].) The record is replete with evidence that the wages paid by defendant were not competitive with other employers unless the bonus was taken into account. The trial court could reasonably infer from the circumstances that the employees relied upon the expectation of a bonus which arose out of defendant's conduct. It was not essential that each employee expressly so testify.[1]

The judgment is affirmed.

Kaus, P. J., and Hastings, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 22, 1979. Bird, C. J., did not participate therein.

---

[1]Indeed, we think the trial court was entitled to draw that reasonable inference even in favor of employee Flery, who expressly conceded on cross-examination that he would have gone to work for defendant had no mention of a bonus been made and would have remained with defendant even if told there would be no bonus. As the sole judge of the credibility of witnesses and resolver of conflicting inferences which could be drawn from the evidence, the trial court could disbelieve Flery's concession.