[Civ. No. 45085. First Dist., Div. Two. Jan. 27, 1981.]

FRED LUCIAN, Plaintiff and Appellant, v.
ALL STATES TRUCKING COMPANY et al.,
Defendants and Respondents.

[Civ. No. 45086. First Dist., Div. Two. Jan. 27, 1981.]

GEOFFREY MESSENGER, Plaintiff and Appellant, v.
ALL STATES TRUCKING COMPANY et al.,
Defendants and Respondents.

[Civ. No. 45301. First Dist., Div. Two. Jan. 27, 1981.]

DEAN LONG, Plaintiff and Appellant, v.
ALL STATES TRUCKING COMPANY et al.,
Defendants and Respondents.

**COUNSEL**

Paul Friedman for Plaintiffs and Appellants.

Littler, Mendelson, Fastiff & Tichy and Kathleen M. Kelley for Defendants and Respondents.

## OPINION

TAYLOR, P. J.—In these consolidated appeals,[1] which arise from three actions, each brought by a former long-term employee against his former employer for payment of a share of the profits earned by each for the year 1974 under "incentive plans," the only question is whether the trial court properly granted a summary judgment. For the reasons set forth below, we have concluded that the judgments must be affirmed.

The underlying facts are not in dispute: Each former employee was a long-term executive employee of one of the defendant-employers[2] and each worked a portion of the year in issue, 1974. Each[3] sought his right to a payment of the share of profits as earned "wages" pursuant to Labor Code section 200.

Lucian's and Messenger's plans contained the following provision: "*An employee who voluntarily leaves the company will not be entitled to any further or year end payments under the Plan.*" (Italics added.) The parallel provision in Long's plan read as follows: "3. *An employee who voluntarily leaves the Company will receive his incentive check providing he works the entire accounting period following the period in which his check was earned.* If a check should be sent to a participant who will not be with the Company throughout the *entire* accounting period following the period in which the incentive was earned, it is the responsibility of the participant's supervisor to return the check to the Payroll Department." (Italics partially added.) In Lucian's and Messenger's plans, the bonuses were payable in full at the end of the calendar year; Long's, partially at the end of the quarter and the balance at the end of the year.

---

[1]Each employee appeals from the March 28, 1978, order granting his respective employers' motion for summary judgment and dismissing his action: in No. 45085, F. Lucian appeals; in No. 45086, G. Messenger appeals; and in No. 45301, D. Long appeals. We granted the motion to consolidate the appeals.

[2]After 24 years of service, Lucian retired as vice president of defendant All States Trucking on April 5, 1974, as a result of ill health. His complaint sought $4,913.37 as wages earned under his incentive plan. Messenger retired on November 1, 1974, after 11 1/2 years of service as office manager for defendant Pacific Intermountain Express, after earning $10,650 in salary for that part of 1974. Long resigned on July 26, 1974, as director of operations and sales of defendant Pacific Intermountain Express, after 18 years of employment. He actually received payment of $2,300 on account of his earned share of profits based on 50 percent of his earned share calculated for the first two quarterly accounting periods. Long sought $4,316 due based upon the final annual calculations of defendants as to incentive earned employee shares due him based on salary earned to date of retirement; $10,000, and company annual earnings.

[3]A copy of the applicable plan was attached to the pleadings in each action.

Other pertinent provisions of each plan were: 1) that the annual incentive earned would be calculated at the end of the year, based on the year's results; and 2) that an employee dismissed by the company or transferred to another location would receive a pro rata distribution under the plan.

The parties agree that bonus incentive plans are "wages" within the meaning of Labor Code section 200, set forth, so far as pertinent, below,[4] and that a summary judgment should not be granted unless there are no triable issues of fact (Code Civ. Proc., § 437c; *People* ex rel. *Riles* v. *Windsor University* (1977) 71 Cal.App.3d 326, 331 [139 Cal.Rptr. 378]). Lucian, Messenger and Long argue that the respective provisions of each plan quoted above create ambiguities as a matter of law and also involve factual issues that must be tried. We do not agree. Lucian, Messenger and Long overlook the uncontroverted affidavit which accompanied the employers' motion for summary judgment. The declaration of John J. O'Kelly, a senior vice president of Pacific Intermountain, stated that in the past, each plan had been consistently interpreted and applied to preclude vesting of any benefits unless the participant completed the current calendar year in the service of his employer.

Contrary to the assertions of Lucian, Messenger and Long, the plans in issue are not ambiguous, and there are no factual issues to be tried. In *Coats* v. *General Motors Corp.* (1938) 11 Cal.2d 601 [81 P.2d 906], the crux of the controversy was whether the employee was dismissed for unsatisfactory service and therefore ineligible for his bonus. As indicated above, each plan clearly stated that the bonus was based on profits, was not determined or payable until the end of a fixed period, and that an employee who voluntarily left his employment was not entitled to a pro rata share of his benefits.[5]  (1)  Thus, an employee who voluntarily leaves his employment before the bonus calculation date is not entitled to receive it. This has been the rule ever since this court (Div. Two) so held in *Peterson* v. *California Shipbuilding Corp.* (1947) 80 Cal. App.2d 827, 831 [183 P.2d 56]. Our rule is in accord with the prevailing view that where a definite bonus or profit-sharing plan has been

[4]"As used in this article: ¶ "(a) 'Wages' includes all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation."

[5]Contrary to the argument of Lucian, Messenger and Long, the pro rata share is payable only to an employee who is dismissed or transferred to another location.

established and forms part of the employment contract, the employee is not entitled to share in the proceeds where he leaves the employment voluntarily (see cases collected at 81 A.L.R.2d 1062, at p. 1082 et seq; *Kassab* v. *Ragnar Benson, Inc.* (W.D.Pa. 1966) 254 F.Supp. 830, at p. 833, is particularly persuasive as it also involved a high-level corporate employee).

As explained in *Walker* v. *American Optical Corporation* (1973) 265 Ore. 327 [509 P.2d 439, 441], a specific bonus plan normally becomes binding as a unilateral contract when the employee begins performance, in the sense that the plan then cannot be revoked by the employer. It does not follow, however, that the employee thereupon becomes entitled to the bonus payment where, as here, the bonus did not become payable until a certain date and the employee voluntarily left his position before that date.

Lucian, Messenger and Long also maintain that the instant plans fall within the rule applied by this court (Div. One) in *Chinn* v. *China Nat. Aviation Corp.* (1955) 138 Cal.App.2d 98 [291 P.2d 91]. *Chinn*, however, falls within the well recognized exception to the general rule: where the benefit is part of the inducement for the initial or continuing employment (see also *Sabatini* v. *Hensley* (1958) 161 Cal. App.2d 172 [326 P.2d 622]; *Hunter* v. *Ryan* (1930) 109 Cal.App. 736 [293 P. 825]). The same exception applies to *Brydges* v. *Coast Wide Land, Inc.* (1970) 2 Wn.App. 223 [467 P.2d 209, 43 A.L.R.3d 496] which involved a real estate salesman's continued employment. *Allen D. Shadron, Inc.* v. *Cole* (1966) 101 Ariz. 341 [419 P.2d 520], also falls within the purvue of this exception, as there the employer, in announcing the plan, did not expressly qualify his promise to pay on any requirement of continued employment.

*Ware* v. *Merril Lynch, Pierce, Fenner & Smith, Inc.* (1972) 24 Cal. App.3d 35 [100 Cal.Rptr. 791], is also inapposite. In *Ware*, the profit-sharing plan in question contained a provision that an employee who voluntarily terminated his employment and went to work for a competitor forfeited his rights to benefits under the plan. This court (Div. Four), relying on the analogy of *Muggill* v. *Reuben H. Donnelley Corp.* (1965) 62 Cal.2d 239, 242 [42 Cal.Rptr. 107, 398 P.2d 147], held at pages 43-44, that the forfeiture clause was invalid as it was contrary to the strong public policy against contracts by which anyone is restrained from engaging in a lawful profession, trade or business. No similar re-

straints are involved here since each employee voluntarily left his employment. Given the executive position held by each, no contentions are made that the provisions of the respective plans were not known or understood.[6]

The judgments are affirmed.

Miller, J., and Smith, J., concurred.

---

[6]Likewise, no arguments were made that the regular payment of the bonus in past years ripened into an implied contract for compensation, apart from the contract. Such an argument is tenable only in the absence of a specific contract (cf. *Simon* v. *Riblet Tramway Co.* (1973) 8 Wn.App. 289 [505 P.2d 1291, 66 A.L.R.3d 1069], cert. den. 414 U.S. 975 [38 L.Ed.2d 218, 94 S.Ct. 289]).