[Civ. No. 47863. First Dist., Div. Three. Feb. 23, 1982.]

DENNIS R. HILL, Plaintiff and Appellant, v.
KAISER AETNA et al., Defendants and Appellants.

COUNSEL

W. Thomas Amen, Philip Keith and Amen & Keith for Plaintiff and Appellant.

Stephen H. Booth and Robert J. Allen, Jr., for Defendants and Appellants.

OPINION

WHITE, P. J.—Plaintiff, respondent and cross-appellant Dennis R. Hill (hereafter respondent) filed a claim with the Labor Commissioner in February of 1978, seeking severance pay and a bonus from defendants, appellants and cross-respondents Kaiser Aetna and KACOR Realty, Inc. (hereafter appellants). The Labor Commissioner ruled that respondent was not entitled to a bonus nor severance pay. Pursuant to Labor Code section 98.2, respondent filed a timely notice of appeal to the Superior Court of Alameda County from the order, decision or award of the Labor Commissioner. After a "de novo" hearing of the dispute in the superior court (pursuant to Lab. Code, § 98.2),[1] the trial court determined that respondent was entitled to a bonus, but that he was not entitled to severance pay. The trial court concluded that (1) appellants were "estopped by their conduct from denying to [respondent] a bonus in the amount of $6,000 for the year 1977"; and (2) respondent's "voluntary termination of employment on January 3, 1978 rendered him ineligible for entitlement to severance pay." Judgment was entered in accordance with the determinations of the trial court. Appellants appeal from the portion of the judgment holding that respondent was entitled to a bonus in the amount of $6,000. Respondent appeals from the portion of the judgment holding that he was not entitled to severance pay.

---

[1]In *Sales Dimensions* v. *Superior Court* (1979) 90 Cal.App.3d 757, 763 [153 Cal.Rptr. 690], the court construed Labor Code section 98.2 which provides that parties may seek review of an order, decision or award of the Labor Commissioner by filing an appeal to the superior court where the same shall be heard de novo as follows: "Since the superior court may hear testimony, including any new evidence, the findings of the Labor Commissioner are entitled to no weight whatsoever, and the proceedings are truly 'a trial anew in the fullest sense.' Review is accorded not to the decision of the commissioner, but to the underlying facts on which depend the merits of the dispute."

Appellants contend that the judgment should be reversed because (1) the application of the estoppel by conduct in this case was improper; indeed, if any theory is proper, it is promissory estoppel which requires a "promise" not here shown, (2) the trial court applied estoppel by conduct in a case wherein the employee *voluntarily* terminated beyond the bonus determination date, (3) the trial court failed to find representation with knowledge of a material fact and detrimental reliance, "indispensable elements necessary to the application of estoppel by conduct," and (4) the trial court's findings Nos. 12 and 16 are not supported by the evidence. We analyze and reject appellants' contentions. Specifically, we conclude that estoppel by conduct is a proper theory upon which to find entitlement for a bonus. (See *Division of Labor Law Enforcement* v. *Transpacific Transportation Co.* (1979) 88 Cal.App.3d 823 [152 Cal.Rptr. 98].) We determine that respondent's cause is the "exception" to the "general rule." (See *Lucian* v. *All States Trucking Co.* (1981) 116 Cal.App.3d 972 [171 Cal.Rptr. 262].) Generally, estoppel is a question of fact for the trial court. (See *People* v. *Surety Ins. Co.* (1978) 77 Cal.App.3d 533, 536 [143 Cal.Rptr. 661].) We interpret the trial court's "conclusion" as a finding of "ultimate" fact which is supported by substantial evidence. Appellants' contention as regards indispensable elements amounts to a request for specific findings of evidentiary facts which is not required. (See *Jay* v. *Dollarhide* (1970) 3 Cal.App.3d 1001, 1032 [84 Cal.Rptr. 538]; *Division of Labor Law Enforcement* v. *Transpacific Transportation Co.* (1977) 69 Cal. App.3d 268, 276 [137 Cal.Rptr. 855].)

We also consider and reject respondent Hill's arguments seeking to reverse the trial court's judgment that appellants are not obligated for severance pay. We affirm the judgment.

*Facts*

Respondent was hired by Kaiser Aetna, a California real estate partnership, in 1970. This partnership consisted of two main partners—(1) Aetna Life Insurance Company (and A L & C Realty Holdings Corporation) and (2) subsidiaries of Kaiser Aluminum and Chemical Corporation (Kaiser Hawaii Kai Development Company, Kaiser Rancho California, Inc., Temecula Properties, Inc., and Westward Properties, Inc.) Respondent testified that at the time he commenced his employment with Kaiser Aetna he was informed that Kaiser Aetna had adopted a dual compensation program and under this program he would receive a base salary and a bonus based on the profitability of

the particular division of the company for which he worked. Respondent received bonuses in the years 1970 through 1974, but due to business losses, he did not receive a bonus in 1975 or 1976.

In February of 1977, it was announced that Kaiser Aetna would dissolve in the near future. The assets of Kaiser Aetna were to be distributed to the two partners. The properties to be received by the subsidiaries of Kaiser Aluminum were to be transferred to a new company that was formally established in September of 1977 (KACOR Realty). KACOR Realty was also a wholly owned subsidiary of Kaiser Aluminum. At the time the intended dissolution was announced respondent was employed by Kaiser Aetna as acting western regional manager.

Respondent, along with other employees, received a letter dated February 9, 1977, which provided in part: "Pending the separation of assets of the Kaiser Aetna Partnership, as described in the February 2, 1977 announcement, we would like you to stay on with Kaiser Aetna as long as your services are required." The letter further provided: "If you wish to stay on through the date we establish and are then terminated, you will receive a severance payment equal to four months of your current salary at the time of your termination, as well as any accrued vacation. I might add, if you commit to stay on, our best efforts will be made to expose your qualifications and background to Kaiser and Aetna affiliated companies." A memorandum dated August 15, 1977, and addressed to "'ALL KACOR Oakland Employees'" stated that employees staying with KACOR would not be eligible to the special severance pay. Shortly following the announcement in February of 1977, the two partners began to operate separately, but the actual dissolution did not occur until September 29, 1977.

Prior to the dissolution, in April of 1977, respondent received a promotion, and received salary increases in both April and October of 1977. An organizational chart outlining positions in the new company, including that of respondent, was prepared and distributed in May. After the dissolution respondent's pay checks came from KACOR, and in early October of 1977, he signed up for the Kaiser Aluminum benefit package made available to KACOR employees. In December respondent received his grade and salary determination in the new KACOR/ Kaiser Aluminum system. This reflected a 15 percent increase over his February 1977 salary.

Throughout the dissolution process in 1977, respondent expressed dissatisfaction with his salary and pressed his supervisor for a bonus commitment. Respondent testified that prior to the dissolution in September of 1977, his "division was very profitable," however, he was aware that profits of Kaiser Aetna "were going to be allocated to the new company...." Respondent testified that he had a meeting with his supervisor, Kwock Tim Yee, in September of 1977, during which respondent expressed concern because he had not received a job description nor been told the terms of his employment with KACOR. Yee told respondent that "he was going to get authority to have an outside consulting firm do a compensation study for all the key employees." Yee informed appellant that the terms of his employment with KACOR could not be established until the end of the year. Respondent thought that during this meeting in September Yee stated that part of the compensation study would concern bonuses. As far as respondent could recall, during this September meeting Yee told respondent that he was recommending "to Kaiser Aluminum management that they institute a bonus program for the key employees of Kaiser Aetna before coming over to KACOR."

Respondent testified that in December of 1977 he had another meeting with his supervisor, during which they discussed what respondent's compensation package would be with KACOR. Yee informed him what his base salary would be with KACOR and that he had recommended that respondent receive a bonus, but that respondent could not rely upon receiving any bonus. Respondent further testified that Yee refused to tell respondent what his recommendation had been for respondent's bonus "or what the basis of calculating the bonus was ...." Respondent informed Yee that a base salary and a "discretionary bonus" was "not competitive in the industry and that I found it unacceptable."

A day or two after respondent's December meeting with his supervisor, respondent went on vacation. Respondent returned from his vacation on January 3, 1978, and that day submitted a letter of resignation to KACOR, requesting both severance pay and a bonus for 1977, and claiming he had been "effectively terminated by the company." The vice president of KACOR Realty wrote respondent in response to his January 3, 1978, letter, stating it was the company's position that respondent had voluntarily resigned (making him ineligible for severance pay), and given the discretionary nature of the bonus, respondent's resignation prior to the bonus declaration date rendered him ineligible to

receive a bonus. The bonuses that the employees of KACOR were to receive were announced in late January of 1978. Respondent's name had originally appeared on the recommended bonus list, but had been removed when his resignation was received. According to the recommended bonus list, respondent was to receive a $6,000 bonus for the year 1977. An employee of KACOR testified that the bonuses that were announced in late January of 1978 were "not necessarily just for past work. They are also for what they do in the future for the company."

### Bonus Issue—Equitable Estoppel

Noting that the facts in the case at bench are "similar" to those shown to exist in *Division of Labor Law Enforcement* v. *Transpacific Transportation Co., supra,* 69 Cal.App.3d 268, appellants contend the trial court erred at law in not delimiting respondent's theory of bonus recovery to a promissory estoppel analysis. *Division of Labor Law Enforcement* v. *Transpacific Transportation Co., supra,* a case involving San Francisco employees similarly terminated as were the company's Los Angeles employees in *Division of Labor Law Enforcement* v. *Transpacific Transportation Co., supra,* 88 Cal.App.3d 823, does hold the obvious, i.e., in order to recover a bonus on the theory of *implied* contract or *promissory* estoppel employees are required to prove the employer's express or implied promise to pay the alleged bonus. *Division of Labor Law Enforcement* v. *Transpacific Transportation Co., supra,* 69 Cal.App.3d 268, however, is not authority that it is impermissible to predicate entitlement to a liability for a bonus upon the principle of estoppel by conduct. In *Division of Labor Law Enforcement* v. *Transpacific Transportation Co., supra,* 69 Cal.App.3d 268, estoppel by conduct was neither pled, argued nor addressed by the court.

■ We find that the trial court did not err at law in concluding that appellants' conduct estopped them from denying respondent a bonus. In *Division of Law Law Enforcement* v. *Transpacific Transportation Co., supra,* 88 Cal.App.3d 823, the Second District of the Court of Appeal held that where employees were terminated by their employer, prior to the bonus declaration date, and where bonuses had been consistently paid in the past, the employer was estopped by conduct from denying bonuses to the employees so terminated. The court specifically found "a reasonable inference" of reliance present, given the employees' continued employment with the firm in the face of noncompetitive salaries. (*Id.,* at p. 830.)

■ The doctrine of estoppel by conduct is embodied in Evidence Code section 623, which states: "Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it."

Five elements must be proved in order to invoke the doctrine: "(1) a representation or concealment of material facts (2) made with knowledge, actual or virtual, of the facts (3) to a party ignorant, actually and permissibly, of the truth (4) with the intention, actual or virtual, that the latter act upon it; and (5) *the party must have been induced to act upon it.*" (7 Witkin, Summary of Cal. Law (8th ed. 1974) Equity, § 132, pp. 5351, 5352, italics in original.) If one of these five elements is missing, there is no estoppel by conduct. (*Ibid.*)

■ At this point we set forth verbatim the trial court's findings of facts related to the issue raised by appellants' remaining contentions: "11. Hill had been employed by Kaiser Aetna under a compensation system contemplating both a base salary and an annual bonus based upon his performance and that of the company. Pursuant thereto he received bonus payments in the years 1970-1974, but none in the years 1975-76 when the employer suffered losses. [¶] 12. The person responsible for calculating year end bonuses, both for predecessor Kaiser Aetna and successor KACOR, calculated a bonus for Hill for the year 1977 at $6,000. [¶] 13. Hill voluntarily quit his employment January 3, 1978. . . . [¶] 16. Bonuses are compensation for services previously rendered and the prospect of receiving a bonus is an inducement to service rendered in the year for which a bonus is calculated." As before stated, from these above-quoted findings of fact, the trial court made the following two conclusions of law: "1. Kaiser Aetna and its successor are liable to Hill for the payment of a bonus in the amount of $6,000 for the year 1977. [¶] 2. Kaiser Aetna and KACOR are estopped by their conduct from denying to Hill a bonus in the amount of $6,000 for the year 1977."

*Division of Labor Law Enforcement* v. *Transpacific Transportation Co., supra,* 88 Cal.App.3d 823, 828 advises: ". . . at this stage of the case, it is important to bear in mind that the findings in favor of plaintiff on the estoppel theory are entitled to the usual presumptions on appeal in favor of the judgment. That is, the judgment in favor of plaintiff must be upheld if there is any substantial evidence to support the

findings; we must view the evidence in the light most favorable to this judgment and resolve all conflicts in the evidence and questions of credibility of witnesses in support of the trial court's findings. (*Stevens v. Parke, Davis & Co.*, 9 Cal.3d 51, 64 . . . ; *Foreman & Clark Corp.* v. *Fallon*, 3 Cal.3d 875, 881 . . . .)"

The fact that both *Transpacific* cases *dealt* with involuntary terminations has not escaped this court. In finding No. 13, the court found respondent voluntarily terminated his employment. In *Lucian* v. *All States Trucking Co., supra*, 116 Cal.App.3d 972, 975, the court unequivocably stated: ". . . an employee who voluntarily leaves his employmènt before the bonus calculation date is not entitled to receive it." (See also *Peterson* v. *California Shipbuilding Corp.* (1947) 80 Cal. App.2d 827 [183 Cal.Rptr. 56].) In *Lucian* the bonus plan at issue contained a specific provision that employees who voluntarily left the firm before the bonus determination date would *not* be entitled to that year's bonus. The *Lucian* court, 116 Cal.App.3d at page 976, however, well recognized an exception to the above last quoted general rule: "where the [bonus] is part of the inducement for the initial or continuing employment (see also *Sabatini* v. *Hensley* (1958) 161 Cal.App.2d 172 . . . ; *Hunter* v. *Ryan* (1930) 109 Cal.App. 736 . . . .)"

Although the trial court found that respondent voluntarily terminated his employment, we find that findings Nos. 11 and 16 bring respondent's case within the exception to the rule. These findings demonstrate the part of the inducement for the initial or continuing employment of respondent with Kaiser Aetna was its compensation system which included both a base salary and an annual bonus. Furthermore, finding No. 11 supports the conclusion that Kaiser Aetna had made an express promise that respondent would receive a bonus under certain circumstances. Furthermore, in *Lucian* v. *All States Trucking Co., supra*, 116 Cal.App.3d 972, 976, the court noted that an Arizona case (*Allen D. Shadron, Inc.* v. *Cole* (1966) 101 Ariz. 341 [419 P.2d 520], came within the purview of the exceptions to the general rule, "as there the employer, in announcing the plan, did not expressly qualify his promise to pay on any requirement of continued employment." In light of finding No. 16, we find *Shadron, Inc., supra*, adds support to our conclusion that the instant case represents the *exception* to the *general rule.* It is to be noted, however, that the above discussion related to Kaiser Aetna and not KACOR.

We find that the trial court's conclusion that KACOR is estopped by its conduct to deny a bonus to respondent is supported by substantial evidence and by the law as well. Appellants urge that the evidence of record is insufficient to support a finding that the element of representation or concealment of material facts is present in this case. Respondent testified that he was not told the terms of his employment with KACOR until December of 1977, although the dissolution of the partnership was announced in February of 1977. In September of 1977, Yee led respondent to believe that a bonus plan was being considered as part of the compensation study that was to be done by a consulting firm. Appellants admit that all during this time it was the policy of appellants that bonuses were discretionary. Under such circumstances appellants were under a duty to disclose this fact to respondent at the earliest opportunity. Furthermore, when Yee told respondent in December of 1977 that he had recommended that respondent receive a bonus, respondent testified that Yee refused to tell respondent what his recommendation had been for respondent's bonus "or what the basis of calculating the bonus was . . . ." We find that the failure of appellants to disclose their policy on bonuses satisfies the element of representation or concealment of material facts for the invocation of the doctrine of estoppel by conduct. (*Lix* v. *Edwards* (1978) 82 Cal. App.3d 573, 580-581 [147 Cal.Rptr. 295].)

We also find no merit to appellants' assertion that there is a failure of proof on the issue of reliance. The necessary type of proof to sustain a finding that the element of reliance has been established in employment cases was well articulated in *Division of Labor Law Enforcement* v. *Transpacific Transportation Co., supra,* 88 Cal.App.3d 823, 831, as follows: "Finally, defendant contends that the element of reliance was not proved. Apparently defendant's position is that it was incumbent upon each of plaintiff's assignors to testify that, were it not for the belief that he would be entitled to a bonus, he would have left defendant's employ or would never have begun working for defendant in the first place. We disagree. In matters of employment relationships such as this, the courts may make reasonable inferences from the realities of the marketplace concerning the inducement and reliance of employees upon the benefits offered by the employer. (See cases cited in *Hepp* v. *Lockheed-California Co.,* 86 Cal.App.3d 714, 718-720 . . . .) The record is replete with evidence that the wages paid by defendant were not competitive with other employers unless the bonus was taken into account. The trial court could reasonably infer from the cir-

cumstances that the employees relied upon the expectation of a bonus which arose out of defendant's conduct. It was not essential that each employee expressly so testify."

The evidence of reliance in the instant case is much stronger than required by *Transpacific Transportation Co.* Respondent testified that when Yee informed him in December of 1977 that respondent would receive a base salary, but that any bonus was discretionary, respondent told Yee that this compensation package was unacceptable to him and not competitive in the industry. A day or two after respondent received this information from Yee, he went on vacation, but the day he returned from vacation he submitted a letter of resignation in which he stated that he had not been offered "any acceptable position" with KACOR.

Respondent was an employee of Kaiser Aetna until September 29, 1977, and one of the terms of his employment with Kaiser Aetna was that he would receive a bonus based upon the profitability of his division. The profits from his division were transferred to KACOR upon the dissolution of the partnership. Respondent was not informed of the terms of his employment with KACOR until the middle of December of 1977. Given the fact that respondent was never informed that his express agreement for a bonus with Kaiser Aetna would not be honored, and the fact that he worked most of the year of 1977 as an employee of Kaiser Aetna, and the fact that respondent was led to believe that KACOR would also adopt a bonus program similar to that of Kaiser Aetna, and the fact that the profits from respondent's division with Kaiser Aetna were allocated to KACOR, and the fact that one of the partners of Kaiser Aetna was Kaiser Aluminum and KACOR is a wholly owned subsidiary of Kaiser Aluminum, KACOR is estopped from denying that it is not bound by the agreement that respondent had with Kaiser Aetna in regard to entitlement of a bonus.

### Severance Pay

█ Respondent, by way of cross-appeal, contends that the offer of four months severance pay contained in the letter of February 1977 remained valid and applicable to him when he was "effectively terminated" in January of the following year.

In support of this claim respondent relies on *Chapin v. Fairchild Camera etc. Corp.* (1973) 31 Cal.App.3d 192 [107 Cal.Rptr. 111],

where the severance pay of a seller company was awarded to employees to another and subsequently terminated by the buying corporation. He ignores the fact that those employees *were terminated by the buying corporation.* Respondent is arguing, in fact, that in a corporate merger, the employees are entitled to the seller's severance pay whenever they voluntarily leave the buying corporation's employment. *Chapin* does not go so far, nor do we.

Further, the Kaiser Aetna offer of severance pay was specifically conditioned on involuntary termination due to a lack of a comparable position in the new company. The letter states: "If you wish to stay on through the date we establish *and are then terminated,* you will receive a severance payment, . . ." (Italics added.) "[A]re then terminated" can only connote action by the corporation, not the employee. Here, respondent voluntarily resigned his position three months after the dissolution and reformation of the company were completed. *Chapin* is not, therefore, applicable, as there is no merit to respondent's contention of effective termination by the company.

Respondent also attempts to construct a promissory estoppel argument in support of his claim, relying on a conversation with his supervisor in September of 1977. There is conflicting testimony as to the substance of that conversation. The trial court, after considering the testimony of both respondent and his supervisor, refused to adopt respondent's proposed finding as to the existence of a promise of severance pay. On review "[o]ur sole task is to determine 'whether the evidence, viewed in the light most favorable to [appellant], sustains [the] findings.'" (*Board of Education* v. *Jack M.* (1977) 19 Cal.3d 691, 697 [139 Cal.Rptr. 700, 566 P.2d 602], quoting *Moran* v. *Board of Medical Examiners* (1948) 32 Cal.2d 301, 309 [196 P.2d 20].) In addition we must defer to the judgment of the trial court regarding inferences which reasonably could be drawn from the testimony. (*Board of Education, supra,* at p. 697.) Based on these authorities and our own review of the record, we affirm the trial court's finding.

Respondent's final argument, that appellant is estopped by its conduct from denying him severance pay, is similarly without merit, due to the lack of any material representation that such payment would be given to an employee continuing on with KACOR.

The judgment is affirmed.

Parties to bear own expenses.

Feinberg, J., and Stern, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.