[No. B207865. Second Dist., Div. Eight. Feb. 22, 2010.]

OAKTREE CAPITAL MANAGEMENT, L.P., et al., Plaintiffs and Respondents, v.
RUSSEL S. BERNARD, Defendant and Appellant.

**COUNSEL**

Reed Smith, James C. Martin, Margaret M. Grignon, Judith E. Posner and Amir Shlesinger for Defendant and Appellant.

Munger, Tolles & Olson, Mark B. Helm, Richard C. St. John and Susan R. Szabo for Plaintiffs and Respondents.

OPINION

**RUBIN, J.**—Russel S. Bernard appeals from the trial court's judgment confirming an arbitration award against him. We affirm.

## FACTS AND PROCEEDINGS

Respondents Howard Marks and Bruce Karsh and others formed respondent Oaktree Capital Management, L.P. (Oaktree), in 1995, a real estate investment hedge fund. Oaktree established limited partnerships called "funds," which it marketed to outside investors. A few months after Oaktree's creation, appellant Russel S. Bernard joined it to manage its funds.

Oaktree charged its investors two types of fees: management fees and incentive fees. Oaktree calculated its management fees as a percentage of total assets under the control of each of its funds. A second fee Oaktree charged its investors was an incentive fee, also called "carried interest." Oaktree collected an incentive fee when a particular fund reached a specified performance benchmark calibrated to encourage managers such as appellant, who received a share of the fee, to achieve superior returns for Oaktree's investors.

In November 2005, appellant resigned from Oaktree. Shortly afterward, he announced his formation of a private equity real estate fund named Westport Capital Partners (Westport). After its establishment, Westport bought 60 Main Street, a commercial building in Connecticut. As later found by the arbitrator, appellant had identified 60 Main Street as an investment opportunity during his employment at Oaktree but had not disclosed its existence to Oaktree's principals. Instead, appellant breached his fiduciary duty to Oaktree by delaying Oaktree's launching of a new fund—"Fund IV"—so that he could buy himself time to present 60 Main Street as a substitute investment for potential Fund IV investors to invest their money with Westport. Among appellant's stalling tactics at Oaktree were misstating Fund IV's intended launch date, declining to meet with potential new investors, and failing to respond to those investors' inquiries. Based on his breach of fiduciary duty, Oaktree formally discharged appellant in December 2005, one month after he had resigned, and refused to pay him incentive fees to which he claimed he was entitled.

Appellant demanded arbitration of his fee dispute with Oaktree. Arbitration began in January 2007. In July, the arbitrator issued her award in respondents' favor. She rejected appellant's claim that his incentive fees vested upon a fund's reaching its performance benchmarks. She found instead that the fees vested only if Oaktree employed appellant when Oaktree distributed the fees.

The arbitrator further found appellant breached his fiduciary duty to Oaktree by attempting to steer investors to Westport and 60 Main Street by delaying Fund IV's launch. The arbitrator awarded Oaktree $12.3 million for the management fees it lost from Fund IV's delayed start up. The arbitrator also awarded respondents $6.7 million in attorneys fees, costs, and interest. Nineteen days after the arbitrator served the award, respondents filed with the trial court a petition to confirm it. The court later entered judgment for respondents confirming the award. This appeal followed.

## DISCUSSION

Appellant contends the court committed two principal errors in confirming the arbitration award. First, the court adopted the arbitrator's findings, which in appellant's view, divested appellant of fees he claims he had already earned, a forfeiture that, among other sins, violates the public policy protecting an employee's compensation. Second, the court adopted the arbitrator's findings making appellant liable for the profits Oaktree lost from its delayed management fees in Fund IV, a liability that violates the public policy prohibiting an employee from being responsible for his employer's ordinary business losses. Respondents counter that we need not address the merits of appellant's contentions because appellant's response to their petition to confirm the arbitration award was untimely. Appellant's untimeliness, according to respondents, waived his right to contest the petition's allegations and the court's confirmation of the arbitrator's award. We hold appellant's response was timely, but we nevertheless affirm the award because it did not satisfy the narrow grounds for judicial review of an arbitration award.

■ "When [a] party petitions the court to confirm the award . . . , [the opposing party] may seek vacation . . . of the award by way of response only if he serves and files his response within 10 days after the service of the petition ([Code of Civ. Proc.,] § 1290.6).[1] Unless the response is duly served and filed, under section 1290 the allegations of the petition are deemed to be admitted by [the other side]." (*DeMello v. Souza* (1973) 36 Cal.App.3d 79, 83 [111 Cal.Rptr. 274].)[2] The relevant facts supporting our conclusion that appellant's response was timely are as follows. On Tuesday, July 31, 2007,

---

[1] All further undesignated section references are to the Code of Civil Procedure.

[2] See also *Evans Products Co. v. Millmen's Union No. 550* (1984) 159 Cal.App.3d 815, 819 [205 Cal.Rptr. 731] ("Code of Civil Procedure section 1290.6 provides so far as pertinent that a response shall be served and filed within 10 days after service of the petition. Since the Union's response was not duly served and filed, the court below properly concluded that the allegations of Evans' petition were deemed to be admitted by the Union."); 12 Miller & Starr, California Real Estate (3d ed. 2008) section 35:93, pages 35-276 to 35-276 (8/08) ("If a petition to confirm has been filed, the response requesting that the award be vacated must be filed within 10 days after service of the petition. If no response to a petition to vacate is filed within the required time, the allegations of the petition are deemed admitted by the respondent.

respondents filed, and by overnight mail served, their petition to confirm the arbitration award. Under Code of Civil Procedure section 1290.6, appellant had 10 days to file his response to the petition. (§ 1290.6 ["A response shall be served and filed within 10 days after service of the petition . . ."].) Appellant calculates he actually had 12 days to respond—10 days under section 1290.6 plus two court days because respondents served the petition by overnight mail. (§ 1013, subd. (c).) Counting 10 days forward from July 31 leads to Friday, August 10, which, when one allows for two extra court days, ends the response period at Tuesday, August 14. On Monday, August 13, alleging federal jurisdiction under diversity of citizenship, appellant removed respondents' confirmation proceeding to federal district court.[3] Once he was there, the district court ordered appellant to show cause why the court should not dismiss the federal action for incomplete diversity of citizenship. Appellant conceded the absence of complete diversity and consented to remand of the matter to state court. The federal court entered its dismissal and remand order on September 6, 2007, and appellant received notice on Friday, September 7, of the court's actions.

The day appellant received notice of the remand to state court, he filed a "Notice of Further Response to Petition to Confirm Arbitration Award." Appellant contends this notice came within the 12 days he had to respond, which had been suspended while the case was pending in federal court. (*Dauenhauer v. Superior Court* (1957) 149 Cal.App.2d 22, 26 [307 P.2d 724] [upon remand, plaintiff has unexpired time left at removal within which to file].) He attached a copy of the response he had filed in federal district court almost three weeks earlier in August, entitled a "Response to Petition to Confirm Arbitration Award." (See *Laguna Village, Inc. v. Laborers' Internat. Union of North America* (1983) 35 Cal.3d 174, 179, 182 [197 Cal.Rptr. 99, 672 P.2d 882] [motion to dismiss in federal court sufficiently similar "in substance" to state court demurrer to save defendant from default for not filing "responsive pleading" to state court complaint when matter remanded to state court].) Although the state court "Notice of Further Response" lacked citation to the arbitration record or substantive argument, it reiterated that appellant would pursue in state court the grounds for vacating the award that he had identified in federal court, including "the arbitrator exceeded her authority and further that the award is legally irreconcilable with the undisputed evidence and well established public policy." Appellant asked the trial court to issue a stay and briefing schedule to allow him time to file a petition

The response is invalid if not filed within the 10-day period even though it was filed within 100 days after service of the award." (Fns. omitted.)).

[3] Appellant filed his motion on Friday, August 10, 2007, but respondents and appellant agree that service on the trial court on August 13 of notice of the motion effected removal.

to vacate the arbitration award. On October 4, 2007, nearly a month after the federal court remanded the matter to state court, appellant filed his petition to vacate.

Appellant contends he complied with the appropriate time limits imposed by the statutory framework for vacating an arbitration award. According to him, his "Notice of Further Response" to file a petition to vacate the award, followed by filing of the petition itself within 100 days of the award's service, was the proper procedure for challenging the award's confirmation. He derives a window of 100 days from Code of Civil Procedure section 1288, which states: "A petition to vacate an award . . . shall be served and filed not later than 100 days after the date of the service of a signed copy of the award on the petitioner." (§ 1288; see also § 1288.2 ["A response requesting that an award be vacated . . . shall be served and filed not later than 100 days after the date of service of a signed copy of the award . . ."].)

■ We agree appellant's response was timely, but not for the precise reasons he advances. Respondents' filing a petition to confirm an arbitration award changed the timing of events. When one side files a petition to confirm the award, the other side must respond within 10 days. "The parties to an arbitration may petition the court to confirm, correct or vacate the award. (Code Civ. Proc., § 1285.) However, such a petition must be served and filed 'not later than 100 days after the date of the service of a signed copy of the award.' (Code Civ. Proc., § 1288.) If a party requests confirmation, within the 100 days specified in section 1288, a response may be filed seeking vacation of the award. *Any such response must, however, be filed within 10 days of the date the petition to confirm is served.* (Code Civ. Proc., § 1290.6.)" (*Elden v. Superior Court* (1997) 53 Cal.App.4th 1497, 1511 [62 Cal.Rptr.2d 322], italics added.) Because appellant filed his response within "10 days" when one allows for the extra days for overnight mail and his temporary removal to federal court, appellant's response was timely irrespective of the 100-day deadline, which case law establishes did not apply here.

The "well delineated statutory scheme" giving a party who opposes a petition to confirm only 10 days to file a response spans several decades. (*DeMello v. Souza, supra,* 36 Cal.App.3d at p. 83.) "[T]he parties may petition the court to confirm, correct or vacate the award (§ 1285). Vacation or correction of an award may also be requested from the court by way of a response filed to a petition to confirm the award. However, while a petition to confirm an award may be served and filed within four years, the petition to vacate or correct an award must be served and filed within 100 days after the service of the award on the petitioner [citations]. The same 100-day limitation applies when vacation or correction of the award is sought by response. . . . To this latter rule there is only one exception. When the party petitions the

court to confirm the award before the expiration of the 100-day period, respondent may seek vacation or correction of the award by way of response only if he serves and files his response within 10 days after the service of the petition (§ 1290.6). Unless the response is duly served and filed, under section 1290 the allegations of the petition are deemed to be admitted by respondent [citation]." (*DeMello v. Souza,* at p. 83, italics omitted; see also *Lovret v. Seyfarth* (1972) 22 Cal.App.3d 841, 856 [101 Cal.Rptr. 143] [10-day limit of § 1290.6 trumps 100-day period of § 1288.2 to file a response after other side files a petition to confirm arbitration award]; *Coordinated Construction, Inc. v. Canoga Big "A," Inc.* (1965) 238 Cal.App.2d 313, 318 [47 Cal.Rptr. 749] [same]; 12 Miller & Starr, Cal. Real Estate, *supra,* § 35:93, pp. 35-275 to 35-276 (8/08) ["If a petition to confirm has been filed, the response requesting that the award be vacated must be filed within 10 days after service of the petition. If no response to a petition to vacate is filed within the required time, the allegations of the petition are deemed admitted by the respondent. The response is invalid if not filed within the 10-day period even though it was filed within 100 days after service of the award." (Fns. omitted.)].)

For several decades, various Courts of Appeal have wrestled with squaring the 10-day deadline for filing a response and the 100-day deadline for filing a petition to vacate. The consensus is the 10-day deadline applies if the other side files a petition, but that consensus emerges from decisions that seemingly struggle with explaining why that rule prevails. Recently, for example, *Eternity Investments, Inc. v. Brown* (2007) 151 Cal.App.4th 739 [60 Cal.Rptr.3d 134], juxtaposed the two seemingly inconsistent deadlines without attempting to reconcile them. " 'A *petition* to *confirm* an award shall be served and filed not later than four years after the date of service of a signed copy of the award on the petitioner. A *petition* to *vacate* an award . . . shall be served and filed not later than 100 days after the date of the service of a signed copy of the award on the petitioner.' (§ 1288, italics added.) 'A *response* requesting that an award be *vacated* or that an award be *corrected* shall be served and filed not later than 100 days after the date of service of a signed copy of the award . . . .' (§ 1288.2, italics added.) In addition, a *response* must be served and filed within 10 days after service of the petition in California . . . . (§§ 1290.6, 1290.4.)" (*Eternity,* at p. 745.) The time deadlines are not inherently inconsistent. The 100 days is measured from service of the *arbitration award.* The 10 days is measured from service of the *petition to confirm.* Nevertheless, commentators have expressed that the various deadlines, overlapping as they are, create confusion and, in some scenarios, mischief. (See Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 2008) ¶¶ 5:506 to 5:507, 5:511, 5:533, 5:537, pp. 5-349, 5-351, 5-358 to 5-360 (rev. # 1, 2008).) We believe the time

may have come for our Supreme Court to provide definitive guidance on the time deadlines a party who seeks to vacate an arbitration award faces when the prevailing party in the arbitration has filed a petition to confirm the award.

■ Even though appellant's response was timely, we nevertheless affirm the arbitration award because it was not subject to judicial challenge. The law narrowly circumscribes judicial review of an arbitration award. Proper grounds for vacating an arbitrator's award are statutory and limited. (*Jordan v. Department of Motor Vehicles* (2002) 100 Cal.App.4th 431, 443 [123 Cal.Rptr.2d 122].) " '[A]n award reached by an arbitrator pursuant to a contractual agreement to arbitrate is not subject to judicial review except on the grounds set forth in [Code of Civil Procedure] sections 1286.2 (to vacate) . . . .' " (*Ibid.*) Because courts review neither the award for legal error nor the merits of the controversy itself, a party to an arbitration may not challenge the award for insufficiency of the evidence or flaws in the arbitrator's reasoning. (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 11 [10 Cal.Rptr.2d 183, 832 P.2d 899]; see also *Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1342 [82 Cal.Rptr.3d 229, 190 P.3d 586].) "[A]n arbitrator's decision is not generally reviewable for errors of fact or law, even if the error appears on the face of the award and causes substantial injustice." (*Jordan v. Department of Motor Vehicles, supra*, 100 Cal.App.4th at p. 443.)

Appellant contends the arbitrator exceeded her powers, thus triggering section 1286.2, subdivision (a)(4), one of the statutory grounds for vacating an award. That statute permits a court to vacate an arbitration award when "The arbitrator[] exceeded [her] powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted." (§ 1286.2, subd. (a)(4).) Appellant asserts the arbitrator exceeded her powers in three broad respects. First, the award rejected appellant's claim for direct incentive fees that he earned for Oaktree's financial performance before his departure. Thus, according to him, the award violated the public policy against forfeiture of earned compensation. (See *Smith v. Superior Court* (2006) 39 Cal.4th 77, 82 [45 Cal.Rptr.3d 394, 137 P.3d 218] [public policy in favor of prompt payment of earned wages]; *City of Palo Alto v. Service Employees Internat. Union* (1999) 77 Cal.App.4th 327, 333–334 [91 Cal.Rptr.2d 500] [rule of limited judicial review of arbitration award does not apply if award violates explicit legislative expression of public policy].) Second, the arbitrator exceeded her powers by enforcing forfeiture of his earned compensation as a penalty for his leaving Oaktree to seek employment elsewhere, in violation of the public policy promoting labor mobility. (Accord, *Muggill v. Reuben H. Donnelley Corp.* (1965) 62 Cal.2d 239, 242–243 [42 Cal.Rptr. 107, 398 P.2d 147] [reversing forfeiture of vested pension benefits when employee began working for competitor].) Third, and finally, the arbitrator exceeded her powers by *fashioning a remedy*—forfeiture of earned compensation—that

cannot be rationally drawn from the arbitration contract. (*Bonshire v. Thompson* (1997) 52 Cal.App.4th 803, 811 [60 Cal.Rptr.2d 716].)

■ We will assume for the sake of discussion that an arbitrator's decision erroneously forfeiting earned compensation as a penalty to a departing employee may be corrected on judicial review of the arbitrator's decision. We also will assume that fashioning a remedy not expressly called for in the arbitration agreement may also be corrected by a motion to vacate. We nevertheless reject appellant's contentions because each rests on an unsupported premise: Appellant's unpaid direct incentive fees vested before he left Oaktree. To the contrary, the arbitrator found as a factual matter that appellant before leaving Oaktree had not earned the direct incentive fees that he demanded. The arbitrator's award stated: "Based on all of the evidence presented, the Arbitrator finds that there was no . . . agreement governing the vesting of Claimant's direct incentive fees . . . ." The arbitrator found appellant "only share[d] in incentive fees actually paid to and received by Oaktree while [he was] at Oaktree." (See *Lucian v. All States Trucking Co.* (1981) 116 Cal.App.3d 972, 976 [171 Cal.Rptr. 262] [employer may condition vesting on continued employment]; *Bach v. Curry* (1968) 258 Cal.App.2d 676, 680 [66 Cal.Rptr. 220]; *Division of Labor Law Enforcement v. Transpacific Transportation Co.* (1979) 88 Cal.App.3d 823, 830–831 [152 Cal.Rptr. 98] [suggesting nonpayment of bonus allowed if employer expressly conditioned payment on being employed when bonuses paid].) Accordingly, no forfeiture occurred when appellant did not receive direct incentive fees after leaving Oaktree. The trial court agreed. It adopted the arbitrator's finding, explaining that appellant's "argument [that the arbitrator divested him of earned compensation] suffers from a fundamental defect: The record does not support his premise that the arbitrator saw fit to strip him of compensation that he had earned. To the contrary, the arbitrator expressly found that [appellant] had *not* earned the vested direct incentive fees that he sought to recover." (Original italics.) The arbitrator's finding was a legal conclusion based on disputed evidence. Under *Moncharsh*, we may not review those findings by the arbitrator even if she was mistaken.

Appellant also contends the arbitrator's $12 million damages award against him exceeded her powers because it made him liable to his employer, Oaktree, for his misfeasance as an employee. Appellant characterizes the award as making him liable for his purportedly not having "adequately discharged one of his employment obligations prior to his lawful departure to start a competing business." He notes public policy bars making employees responsible for an employer's business losses. (*Hudgins v. Neiman Marcus Group, Inc.* (1995) 34 Cal.App.4th 1109, 1111 [41 Cal.Rptr.2d 46]; Lab. Code, § 221.) Appellant misconstrues, however, the basis of the arbitrator's finding in support of the award. The arbitrator concluded that appellant's delay in launching Fund IV was not from negligence, inattentiveness, or some other

sort of nonwillful conduct for which an employer ordinarily cannot recover from an employee. Instead, appellant delayed launching the fund for his personal benefit, which breached appellant's fiduciary duties to Oaktree. The arbitrator found that appellant was both an employee and a member of appellant's limited partnership. As a partner, he had fiduciary duties to the partnership. (*BT-I v. Equitable Life Assurance Society* (1999) 75 Cal.App.4th 1406, 1410–1411 [89 Cal.Rptr.2d 811].) The arbitrator found, "The evidence is clear that prior to his leaving Oaktree, [appellant] collected Oaktree information to take with him to his new venture." The arbitrator also found "The evidence is also clear that [appellant] made an offer on 60 Main Street using Oaktree's name and Oaktree's financial clout without Oaktree's permission and with no intention of actually purchasing the property for Oaktree." Based on her factual findings, the arbitrator found appellant breached his fiduciary duty to Oaktree. In sum, the arbitrator found, "Given all of the other evidence presented, the obvious conclusion is that [appellant] was stalling the launch of Fund IV so that he could deflect possible investment sources to the new entity he was forming" for 60 Main Street. None of the arbitrator's findings suggests she was holding appellant as an employee responsible for negligence that caused his employer damage.

■ Appellant's characterization of the damages award as an unlawful restraint on his right to seek employment elsewhere similarly fails. He asserts the arbitrator assessed him a $12 million breach of contract "penalty" for leaving Oaktree to work for a competitor. But that was not the nature of the $12 million award. The arbitrator issued the award to compensate Oaktree for appellant's tortious delay in launching Fund IV in order to redirect potential investors to his new company. Tort damages for breach of fiduciary duty are not what case law envisions as unlawful restraints on labor mobility. (See, e.g., *Edwards v. Arthur Andersen LLP* (2008) 44 Cal.4th 937, 945 [81 Cal.Rptr.3d 282, 189 P.3d 285] [employee covenant not to compete]; *Muggill v. Reuben H. Donnelley Corp., supra*, 62 Cal.2d 239 [forfeiture of vested pension payments].) Nothing the arbitrator found precluded appellant from establishing or working for Westport or competing with Oaktree.

Appellant cites *Lazard Debt Recovery GP, LLC v. Weinstock* (Del.Ch. 2004) 864 A.2d 955, 965–966 but it is inapposite. It stands for the proposition that an investment fund manager who resigns does not, by virtue of the resignation alone, breach his fiduciary duty. In that decision, the resigning partner was not liable for the fund's business losses after investors' confidence fell in the fund when he stopped managing it. Here, however, the arbitrator found appellant breached his fiduciary duty to Oaktree for reasons independent of his resignation, by conduct occurring before resigning.

Appellant contends the customary limits on judicial review of an arbitration award do not apply here because the arbitration agreement stated the

arbitrator was tantamount to a superior court judge. The agreement stated: "The arbitrator shall make all rulings in accordance with . . . governing law . . . and shall have authority equivalent to that of a California Superior Court judge, including the right to grant equitable relief, to the same extent as such relief would be available in an action pending in the Los Angeles Superior Court in which all parties have appeared."

■ Courts have not, however, interpreted similarly worded clauses in other arbitration agreements as permitting judicial review. "[I]t is clear that the parties to an arbitration agreement could not render an arbitrator's decision reviewable for errors of law merely by providing in the agreement that the arbitrator must apply California law. Instead, the parties could obtain court review of the merits of the arbitrator's decision only if the arbitration agreement *expressly provided* that the arbitrator's errors of law were reviewable in court." (*Baize v. Eastridge Companies, LLC* (2006) 142 Cal.App.4th 293, 301 [47 Cal.Rptr.3d 763] (*Baize*).)[4]

Our Supreme Court recently reiterated that the arbitration agreement must explicitly state judicial review shall be available. In *Cable Connection, Inc. v. DIRECTV, Inc., supra,* 44 Cal.4th 1334, the court stated: "[T]o take themselves out of the general rule that the merits of the award are not subject to judicial review, the parties must clearly agree that legal errors are an excess of arbitral authority that is reviewable by the courts. . . . [W]e emphasize that parties seeking to allow judicial review of the merits . . . would be well advised to provide for that review explicitly and unambiguously." (*Id.* at p. 1361.)

In any case, the arbitration agreement here barred judicial review. It stated that the arbitrator's award will be "binding" and that "[a]ll decisions of the arbitrator . . . shall not be subject to appeal." In light of this unambiguous language to the contrary, and in the absence of an explicit provision allowing judicial review, *Moncharsh*'s rule barring judicial review of an arbitration award applies. (*Baize, supra,* 142 Cal.App.4th at p. 302.)

---

[4] In *Baize* the court found the following language to be inadequate to preserve judicial review: "(1) 'The Arbitrator shall have the authority of a sitting judge with respect to handling this matter and shall apply California law'; (2) 'The Arbitrator shall apply the substantive law (and the law of remedies, if applicable) of the state of California, as applicable to the issues presented in this case. The Arbitrator is without jurisdiction to apply any different substantive law or the law of remedies'; and (3) 'Notwithstanding any provision to the contrary that may be contained in the Rules the Arbitrator shall be constrained by the rule of law and any arbitration award shall be based thereon.' " (*Baize, supra,* 142 Cal.App.4th at p. 297, fn. omitted.)

## DISPOSITION

The judgment confirming the arbitration award in favor of respondents is affirmed. Respondents to recover their costs on appeal.

Bigelow, P. J., and Flier, J., concurred.