BAMATTRE-MANOUKIAN, J., Concurring and Dissenting.
I concur with the majority’s conclusion that plaintiffs have failed to state causes of action for negligent misrepresentation, intentional infliction of emotional distress, and estoppel in pais. I respectfully dissent from the majority’s conclusion that plaintiffs have adequately alleged causes of action for breach of contract, misrepresentation-concealment, and promissory estoppel. I would therefore affirm the trial court’s February 15, 2011 judgment dismissing the entire action with prejudice after plaintiffs elected not to further amend their first amended complaint.
In this case, plaintiffs Irma Moncada, Randy Morris, and Everardo Serrano (hereafter, plaintiffs) brought a lawsuit against their former employer, defendant West Coast Quartz Corporation (West Coast) and defendants Paul Maloney, president and chief financial officer, and Nancy Tkalcevic, chief executive officer. Plaintiffs allege that defendants broke their promise to pay plaintiffs a retention bonus of enough money to retire and not work again if they continued to work for West Coast until the company was sold.
Plaintiffs were given the opportunity to amend their first amended complaint but were unable to allege that defendants’ promise included terms that were more definite than a vague and uncertain promise to give plaintiffs a bonus in an amount sufficient to retire and not work again if plaintiffs continued to work at West Coast until the company was sold. Plaintiffs were also unable to allege that defendants had agreed that the amount of the bonus could be determined by a third person, such as a financial planner, or by a specific standard. (Civ. Code, § 1610[1]; see Bewick v. Mecharn (1945) 26 Cal.2d 92, 98-99 [156 P.2d 757] (Bewick).) Further, plaintiffs declined the trial court’s invitation to amend their first amended complaint to seek recovery under the doctrine of quantum meruit. (§ 1611; see Hunter v. Ryan (1930) 109 Cal.App. 736, 738 [293 P. 825].)
I would find that the alleged promise of a retention bonus in an amount sufficient for an employee to retire and not work again is unenforceable under the doctrine of unenforceability of indefinite promises articulated by the California Supreme Court in Scott v. Pacific Gas & Electric Co. (1995) 11 Cal.4th 454 [46 Cal.Rptr.2d 427, 904 P.2d 834] (Scott), disapproved on another ground in Guz v. Bechtel National, Inc. (2000) 24 Cal.4th 317, 352, fn. *784 17 [100 Cal.Rptr.2d 352, 8 P.3d 1089] (Guz).) “ ‘ “[Although the terms of a contract need not be stated in the minutest detail, it is requisite to enforceability that it must evidence a meeting of the minds upon the essential features of the agreement, and that the scope of the duty and limits of acceptable performance be at least sufficiently defined to provide a rational basis for the assessment of damages. . . .” ’ [Citation.]” (Scott, supra, at p. 467.) As I will further explain, plaintiffs’ allegations are not sufficiently definite for the amount of the alleged retirement bonus to be rationally assessed as contract damages.
Although I agree with my colleagues that defendants’ alleged conduct of making a false promise to pay a retention bonus was “not exemplary” conduct by an employer (Trerice v. Blue Cross of California (1989) 209 Cal.App.3d 878, 884 [257 Cal.Rptr. 338] (Trerice)), I believe that as an intermediate appellate court we are bound to follow and apply the California Supreme Court’s prevailing precedent in Scott. I also believe, for the reasons stated below, that defendants’ alleged promise is insufficiently definite to support the causes of action for misrepresentation-concealment and promissory estoppel.
However, I agree with the trial court that plaintiffs were not precluded from seeking leave to amend their first amended complaint to seek recovery under the doctrine of quantum meruit.
I. FACTUAL AND PROCEDURAL BACKGROUND
A. The Original Complaint
On April 13, 2010, plaintiffs filed their original complaint against defendants West Coast, Maloney, and Tkalcevic. They alleged that Maloney and Tkalcevic were also the two sole shareholders of West Coast. Plaintiffs were either long-term employees, managers, and/or key employees.
Plaintiffs further alleged that in June 2004, Maloney and Tkalcevic informed the managers and key employees, including plaintiffs, that they were intending to sell the company. Maloney and Tkalcevic also informed the managers and key employees that if they agreed to continue working while the sale was pending, they would be given an equity interest in the company. When several months passed and the requests of the managers and key employees for stock “went unheeded,” some of them began to leave the company. Plaintiffs assert that “[a]t that time, the Defendants told Plaintiffs that if they agreed to stay and continue to work at the company they would be provided with a bonus when the company was sold in an amount sufficient for them to retire and not have to work any further. The Plaintiffs agreed to do so.”
*785 According to plaintiffs, “[thereafter, on numerous occasions the Defendants reiterated their promises to reward the Plaintiffs for continuing to work at Defendant, West Coast, and to forgo other employment by restating that when the company was sold the Plaintiffs would receive a bonus in an amount sufficient for them and Defendants, Maloney and Tkalcevic, to retire and to not have to work any longer.” Based on these promises, plaintiffs did not seek other employment and continued to work diligently for West Coast. Defendants declined plaintiffs’ request to put the promises in writing on the ground that to do so would have adverse tax consequences.
In November 2009, plaintiffs learned that West Coast had been sold to a larger worldwide company and that Maloney and Tkalcevic had transferred their shares to that company. Plaintiffs also learned that other employees had received “substantial sums in fulfillment of the promises made.” Although they had worked at the company until it was sold, plaintiffs did not receive the promised retirement bonus.
Based on these allegations, plaintiffs asserted causes of action for “misrepresentation-concealment,” breach of contract, promissory estoppel, intentional infliction of emotional distress, estoppel in pais, and violation of Business and Professions Code section 17200.
B. The September 7, 2010 Order
Defendant West Coast demurred to the original complaint on the ground that the allegations failed to state facts sufficient for any of the causes of action included in the complaint and were also uncertain and unintelligible.
In its supporting points and authorities, West Coast argued that the action was time-barred; the cause of action for misrepresentation-concealment failed to allege a specific amount of damages; the allegation of a promise to pay an unspecified bonus in an amount sufficient to retire was too vague to create an enforceable contract; the cause of action for promissory estoppel also failed to alleged a clear promise; plaintiffs did not allege the outrageous conduct necessary for a cause of action for intentional infliction of emotional distress; estoppel in pais is a defensive doctrine, not a cognizable cause of action; and the cause of action for violation of Business and Professions Code section 17200 could not be sustained since all of the other causes of action were legally insufficient. Defendants Maloney and Tkalcevic made similar arguments in their points and authorities in support of their demurrers to the original complaint.
Analyzing the defendants’ demurrers together, the trial court ruled in its order of September 7, 2010, that (1) the demurrer on statute of limitations *786 grounds was overruled; (2) the demurrers to the cause of action for misrepresentation-concealment, breach of contract, and promissory estoppel were sustained with leave to amend because the promises alleged were “not sufficiently definite enough to allow damages to be properly computed and assessed”; (3) the demurrer to the cause of action for intentional infliction of emotional distress was sustained with leave to amend because the allegations “do not support the element of extreme and outrageous conduct that is so outrageous as to be classified as intolerable in a civilized society”; (4) the demurrer to the cause of action for estoppel in pais was sustained without leave to amend because plaintiffs had not shown that estoppel in pais is a recognized cause of action in California; and (5) the cause of action under Business and Professions Code section 17200 was sustained with leave to amend since there was no likelihood that the alleged conduct would recur.
C. The First Amended Complaint
Plaintiffs subsequently filed a first amended complaint (the amended complaint) on October 4, 2010. The amendments included more details about defendants’ alleged promise to pay plaintiffs a bonus in an amount sufficient for retirement if they continued working for the company until it was sold. The amended complaint also added a cause of action for negligent misrepresentation and omitted two causes of action that had been asserted in the original complaint (estoppel in pais and violation of Bus. & Prof. Code, § 17200).
Regarding the alleged promise of a retirement bonus, the amended complaint included the additional allegations that on multiple, specific occasions, during the period of June 2004 to April 2009, defendants Maloney and Tkalcevic had reiterated their promise that if plaintiffs continued to work for West Coast they would receive enough money to retire when the company was sold. Defendants also told plaintiffs that they were working with “advisers to make sure that the bonuses would not be taxed.”
Plaintiff Moncada was specifically told, among other things, that she would “be done with working and would be able to stay at home with her babies and retire once the company was sold.” Plaintiff Serrano was asked “to stay at the company pending the sale and that if he did so he would then be able to get the bonus and retire and be with his family along with the others.” Defendant Tkalcevic told plaintiff Morris that the retirement bonus promise could not be put in writing due to “ ‘tax issues.’ ” Defendant Maloney told Morris, “ ‘[rjemember you are going to get a bonus when the company is sold so you can retire.’ ”
Plaintiffs also alleged that they “understood” that they had to continue working at West Coast to receive the retirement bonus. Plaintiffs also *787 “understood” that once the company was sold, defendants would determine the specific amount of plaintiffs’ bonuses by “using information about the Plaintiffs’ debts and obligations, their lifestyles at that time and actuarial information sufficient to allow financial planners to set a specific amount for each of them given their specific circumstances at that time.” Based on defendants’ promise of a retirement bonus, plaintiffs continued to work for West Coast and did not accept or seek other employment opportunities, did not move to other locations with better schools, and gave up opportunities to obtain retirement monies and better compensation from other companies.
In November 2009, plaintiffs learned that West Coast had been sold and that Maloney and Tkalcevic had transferred their shares to the acquiring company. When defendants refused to disclose the terms of the sale, plaintiffs learned from public sources that Maloney and Tkalcevic had received $30.21 million for their shares. Although other employees received nominal bonuses after the sale of the company, no monies were paid to plaintiffs.
D. Demurrers to the Amended Complaint
West Coast demurred to the amended complaint on the grounds that the action was time-barred and the amended complaint failed to state facts sufficient for any of the causes of action.
Regarding the causes of action for misrepresentation-concealment, promissory estoppel, and negligent misrepresentation, West Coast argued that the alleged promise of a retirement bonus remained fatally vague and uncertain. As to the cause of action for breach of contract, West Coast argued that the vague and uncertain promise of a retirement bonus could not, as a matter of law, form the basis for an enforceable contract since damages for breach of contract could not be calculated. Finally, West Coast asserted that plaintiffs did not allege conduct by defendants that could be reasonably regarded as extreme and outrageous and therefore the amended complaint failed to state facts sufficient for the cause of action for intentional infliction of emotional distress.
Maloney and Tkalcevic demurred to the amended complaint on the similar grounds that plaintiffs had failed to state facts sufficient for the misrepresentation-concealment, promissory estoppel, negligent misrepresentation, and breach of contract causes of action because the alleged promise of a retirement bonus was too vague and indefinite. Maloney and Tkalcevic further contended that plaintiffs had failed to state a cause of action for intentional infliction of emotional distress because the allegation of defendants’ failure to pay promised compensation in an unspecified amount did not qualify as outrageous conduct.
*788 Plaintiffs opposed the demurrers, arguing that the amended complaint stated sufficient facts for all causes of action. They maintained that an enforceable unilateral contract was created when they continued to work for West Coast in exchange for the promised retirement bonus, even if the bonus was unspecified. Plaintiffs also argued that the causes of action for misrepresentation-concealment, promissory estoppel, and negligent misrepresentation sufficiently alleged that defendants knowingly deceived plaintiffs by making a false promise of a retirement bonus.
Further, plaintiffs asserted that the cause of action for intentional infliction of emotional distress sufficiently alleged outrageous conduct, consisting of defendants’ “virtually enslaving] the Plaintiffs for 5 years by inducing the Plaintiffs to give up their freedom including their rights to go to a company which paid more, which had better benefits, which had a retirement plan and to forego moving to better locations where better schools existed or better housing. . . . The Defendants intentionally used the Plaintiffs as pawns to increase the saleability of West Coast to their benefit and to the Plaintiffs’ detriment.”
E. The February 9, 2011 Order
The trial court ruled on all of defendants’ demurrers in its order of February 9, 2011.
As to the first cause of action for misrepresentation-concealment, the trial court sustained the demurrers with leave to amend on the ground that the amended complaint failed to state facts sufficient for that cause of action. The court stated, “At the hearing, plaintiffs’ counsel responded to a question from the court stating plaintiffs were not pursuing any damages other than the loss of the promised retirement bonus. Based upon that concession, the court finds the alleged promise to be too vague to support a fraud claim. [Citation.]”
The trial court also sustained the demurrers to the second cause of action for breach of contract with leave to amend on the ground that the amended complaint did not state facts sufficient for that cause of action. The court stated that “[t]he promised retirement bonus is too indefinite to be enforced, but plaintiffs shall have leave to amend to seek quantum meruit.”
The demurrers to the third cause of action for promissory estoppel and the fifth cause of action for negligent misrepresentation were similarly sustained with leave to amend on the ground that the amended complaint did not state facts sufficient for either cause of action because the alleged promise was “too vague to support a fraud claim.”
Finally, the trial court sustained the demurrers to the fourth cause of action for intentional infliction of emotional distress without leave amend, finding *789 that the amended complaint “does not allege extreme or outrageous conduct by defendant West Coast.”
On February 15, 2011, the trial court entered a judgment dismissing the entire action with prejudice.[2] The judgment states that it was based upon the court’s orders of September 7, 2010, and February 9, 2011. The judgment also states, “On February 11, 2011, plaintiffs advised defendants that they would not be further amending the complaint.”
Plaintiffs subsequently filed a timely notice of appeal from the judgment of dismissal.
n. DISCUSSION
On appeal, plaintiffs contend that the trial court erroneously ruled in its order of February 9, 2011, that the amended complaint failed to state facts sufficient for any of the five causes of action included in the amended complaint (misrepresentation-concealment, breach of contract, promissory estoppel, intentional infliction of emotional distress, and negligent misrepresentation). They also argue that the trial court erred in its prior order of September 7, 2010, when the court ruled that a cause of action for estoppel in pais is not recognized in California and sustained the demurrer to that cause of action without leave to amend.
As a threshold matter I believe this court should first consider defendants’ claim that plaintiffs have waived the issues they seek to raise on appeal, which was not expressly addressed in the majority opinion.
A. Waiver
Defendants argue that plaintiffs have waived their appellate challenge to the trial court’s ruling that the alleged promise of a retirement bonus was too vague to enforce or to support a fraud claim, and therefore the judgment should be affirmed as to the causes of action for misrepresentation, breach of contract, and promissory estoppel.
According to defendants, since plaintiffs did not seek appellate review of the trial court’s ruling in the September 7, 2010 order that the allegations in the original complaint regarding the promise of a retirement bonus were too vague to either create an enforceable contract or to support the causes of *790 action for misrepresentation and promissory estoppel, and then filed an amended complaint with no substantive changes to the allegations, they have waived any appellate challenge to that ruling.
Additionally, Maloney and Tkalcevic argue that plaintiffs have waived their appellate challenge to the trial court’s ruling sustaining the demurrer to the cause of action for intentional infliction of emotional distress because they filed an amended complaint. Maloney and Tkalcevic assert that the amended complaint “simply add[ed] detail” to the “original defective allegations.” For that reason, Maloney and Tkalcevic maintain that plaintiffs have conceded the correctness of the trial court’s September 7, 2010 ruling that the allegations pertaining to the promise of a retirement bonus were insufficient for a cause of action for intentional infliction of emotional distress.
This court has previously stated the relevant rules: “ ‘Upon an appeal pursuant to [Code of Civil Procedure sjection 904.1 or 904.2, the reviewing court may review the verdict or decision and any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment or order appealed from or which substantially affects the rights of a party’ if the intermediate order was not appealable. (Code Civ. Proc., § 906, italics added.) When a demurrer is sustained with leave to amend, and the plaintiff chooses not to amend but to stand on the complaint, an appeal from the ensuing dismissal order may challenge the validity of the intermediate ruling sustaining the demurrer. [Citation.] On the other hand, where the plaintiff chooses to amend, any error in the sustaining of the demurrer is ordinarily waived. [Citations.]” (County of Santa Clara v. Atlantic Richfield Co. (2006) 137 Cal.App.4th 292, 312 [40 Cal.Rptr.3d 313] (County of Santa Clara).)
In the present case, the trial court’s order of September 7, 2010 sustained the demurrers to all causes of action in the original complaint with leave to amend, except the cause of action for estoppel in pais to which the demurrer was sustained without leave to amend. The amended complaint contained expanded versions of the causes of action for misrepresentation-concealment, breach of contract, promissory estoppel, and intentional infliction of emotional distress, and added a new cause of action for negligent misrepresentation. The trial court’s subsequent order of February 9, 2011 sustained the demurrers to all causes of action with leave to amend, except the cause of action for intentional infliction of emotional distress to which the demurrer was sustained without leave to amend.
Pursuant to Code of Civil Procedure section 906, I determine that the portion of the September 7, 2010 order sustaining the demurrer to the cause of action for estoppel in pais in the original complaint without leave to amend *791 may be reviewed on appeal from the judgment of dismissal as an “intermediate ruling . . . which involves the merits or necessarily affects the judgment or order appealed from . . . .” (Code Civ. Proc., § 906.) To the extent plaintiffs challenge other portions of the September 7, 2010 order, they have waived that appellate challenge since they filed an amended complaint. (County of Santa Clara, supra, 137 Cal.App.4th at p. 312.)
The merits of plaintiffs’ challenge to the February 9, 2011 order sustaining the demurrers to all causes of action in the amended complaint may also be considered on appeal, since that order also constitutes an intermediate ruling that necessarily affects the judgment. (Code Civ. Proc., § 906.) Whether the amendments to the causes of action state sufficient facts to survive defendants’ demurrers to the amended complaint is the overall issue to be addressed on appeal.
For these reasons, I would determine that plaintiffs have not waived the issue of whether the trial court erred in ruling in its order of February 9, 2011, that plaintiffs failed to state facts sufficient for any of the causes of action included in the amended complaint. Plaintiffs also have not waived the issue of whether the trial court erred in ruling in its prior order of September 7, 2010, that a cause of action for estoppel in pais is not recognized in California and sustaining the demurrer to that cause of action in the original complaint without leave to amend.
Before turning to plaintiffs’ contentions on appeal, I will outline the applicable standard of review.
B. Standard of Review
The reviewing court assumes the truth of all facts properly pleaded by the plaintiff on appeal from a judgment of dismissal after a demurrer is sustained. (Evans v. City of Berkeley (2006) 38 Cal.4th 1, 6 [40 Cal.Rptr.3d 205, 129 P.3d 394] (Evans).) “We also accept as true all facts that may be implied or reasonably inferred from those expressly alleged. [Citation.]” (Rotolo v. San Jose Sports & Entertainment, LLC (2007) 151 Cal.App.4th 307, 320-321 [59 Cal.Rptr.3d 770].) Further, “we give the complaint a reasonable interpretation, and read it in context. [Citation.]” (Schifando v. City of Los Angeles (2003) 31 Cal.4th 1074, 1081 [6 Cal.Rptr.3d 457, 79 P.3d 569] (Schifando).) But we do not assume the truth of “ ‘ “contentions, deductions or conclusions of fact or law.” ’ ” (Evans, supra, at p. 6.)
The court also considers matters that may be judicially noticed. (Code Civ. Proc., § 430.30, subd. (a); Schifando, supra, 31 Cal.4th atp. 1081.) Additionally, we consider the complaint’s exhibits. (Hoffman v. Smithwoods RV Park, *792 LLC (2009) 179 Cal.App.4th 390, 400 [102 Cal.Rptr.3d 72] (Hoffman).) After reviewing the allegations of the complaint, the complaint’s exhibits, and the matters properly subject to judicial notice, we exercise our independent judgment as to whether the complaint states a cause of action as a matter of law. (See Moore v. Regents of University of California (1990) 51 Cal.3d 120, 125 [271 Cal.Rptr. 146, 793 P.2d 479].)
Where, as here, the “ ‘plaintiff is given the opportunity to amend his [or her] complaint and elects not to do so, strict construction of the complaint is required and it must be presumed that the plaintiff has stated as strong a case as he [or she] can.’ [Citations.]” (Reynolds v. Bement (2005) 36 Cal.4th 1075, 1091 [32 Cal.Rptr.3d 483, 116 P.3d 1162] (Reynolds), abrogated on other grounds in Martinez v. Combs (2010) 49 Cal.4th 35, 66 [109 Cal.Rptr.3d 514, 231 P.3d 259]; accord, Hoffman, supra, 179 Cal.App.4th at p. 408.)
However, “[t]he issue of leave to amend is always open on appeal, even if not raised by the plaintiff. [Citation.]” (City of Stockton v. Superior Court (2007) 42 Cal.4th 730, 746 [68 Cal.Rptr.3d 295, 171 P.3d 20].) “[L]eave to amend is properly granted where resolution of the legal issues does not foreclose the possibility that the plaintiff may supply necessary factual allegations.” (Id. at p. 747.) “The plaintiff has the burden of proving that an amendment would cure the defect. [Citation.]” (Schifando, supra, 31 Cal.4th at p. 1081.)
C. Breach of Contract
1. The Parties’ Contentions
Plaintiffs’ first contention on appeal is that the trial court erred, in its order of February 9, 2011, when the court sustained the demurrer to the cause of action for breach of contract in the amended complaint. They assert that the allegations in the amended complaint are sufficient to show that they entered into an enforceable unilateral contract by continuing their employment for West Coast in exchange for the promise of a bonus in an amount sufficient for them to retire when the company was sold. Relying on the decision in Sabatini v. Hensley (1958) 161 Cal.App.2d 172 [326 P.2d 622] (Sabatini), plaintiffs argue that their allegation of an unspecified retirement bonus did not render the agreement too indefinite for enforcement. They explain that the allegations in the amended complaint set forth the manner in which the retirement bonuses would be calculated “by financial planners using specific and definite information.”
Defendants reject plaintiffs’ argument regarding an enforceable unilateral contact. Relying on Ladas v. California State Auto. Assn. (1993) 19 *793 Cal.App.4th 761 [23 Cal.Rptr.2d 810] (Ladas), they contend that the alleged promise of an unspecified retirement bonus, which plaintiffs understood was to be calculated on the basis of each individual plaintiff’s “personal lifestyle, debts and obligations” on the date West Coast was sold, is too vague and indefinite to constitute an enforceable bonus agreement. Defendants point out that plaintiffs do not allege that any of the claimed factors for calculating the alleged retirement were ever discussed or agreed upon by the parties and contend there was no meeting of the minds with regard to the retirement bonus.
Defendants further contend that since the promise of a retirement bonus in an amount sufficient for each plaintiff to retire would have to be adjusted to accommodate future changes in their lifestyles, debts, and obligations, there is no rational basis for determining whether the contract has been breached and computing damages, and, therefore, the alleged contract is unenforceable.
2. Applicable Law
It has long been the general rule in California that “[w]here a contract is so uncertain and indefinite that the intention of the parties in material particulars cannot be ascertained, the contract is void and unenforceable. [Citations.] . . . Unless the court has ascertainable provisions of agreement before it, there is no contract on which the court may act. However, ‘The law does not favor but leans against the destruction of contracts because of uncertainty; and it will, if feasible, so construe agreements as to carry into effect the reasonable intentions of the parties if that can be ascertained.’ [Citations.]” (Cal. Lettuce Growers v. Union Sugar Co. (1955) 45 Cal.2d 474, 481 [289 P.2d 785]; see Coleman Engineering Co. v. North American Aviation, Inc. (1966) 65 Cal.2d 396, 417 [55 Cal.Rptr. 1, 420 P.2d 713].) It is a question of law whether a contract term is sufficiently definite to be enforceable. (Ladas, supra, 19 Cal.App.4th at p. 770, fn. 2.)
In Ladas, three insurance sales representatives claimed that their employer, the California State Automobile Association, had breached their employment contract by failing to pay them in parity with other similarly situated insurance sales representatives in the insurance industry. (Ladas, supra, 19 Cal.App.4th at p. 767.) The appellate court stated the mle that “[t]o be enforceable, a promise must be definite enough that a court can determine the scope of the duty and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages. [Citations.]” (Id. at p. 770.) Applying this rule, the appellate court agreed with the trial court’s ruling that “[a]n amorphous promise to ‘consider’ what employees at other companies are earning cannot rise to the level of a contractual duty. . . . The nature of the obligation asserted provides no rational method for determining breach or computing damages.” (Id. at p. 771.)
*794 The Ladas court also found that policy reasons supported its determination that the plaintiff insurance sales representatives had not entered into an enforceable contract. “Employers frequently boast of good benefits, competitive salaries, excellent working conditions and the like. To anoint such puffing language with contractual import would open the door to a plethora of specious litigation and constitute a severe and unwarranted intrusion on the ability of business enterprises to manage internal affairs.” (Ladas, supra, 19 Cal.App.4th at p. 772.)
Similarly, in Rochlis v. Walt Disney Co. (1993) 19 Cal.App.4th 201, 213-214 [23 Cal.Rptr.2d 793] (Rochlis), disapproved on another ground in Turner v. Anheuser-Busch, Inc. (1994) 7 Cal.4th 1238, 1251 [32 Cal.Rptr.2d 223, 876 P.2d 1022], the appellate court rejected a former employee’s claim that The Walt Disney Company had made enforceable promises to pay the employee “ ‘appropriate’ ” salary increases or bonuses and to give him “an ‘active and meaningful’ participation in creative decisions.” The court concluded that “these promises . . . will not support a breach of contract claim in any event. They are not sufficiently certain to be enforced and would improperly impose on the court the burden of making financial and management decisions better left to the parties.” (Id. at p. 214.)
The decisions in Rochlis and Ladas were subsequently cited with approval by the California Supreme Court. “The Ladas court . . . applied the well-established principle that ‘ “[although the terms of a contract need not be stated in the minutest detail, it is requisite to enforceability that it must evidence a meeting of the minds upon the essential features of the agreement, and that the scope of the duty and limits of acceptable performance be at least sufficiently defined to provide a rational basis for the assessment of damages. . . .” ’ [Citation.]” (Scott, supra, 11 Cal.4th at p. 467.)
The California Supreme Court in Scott further stated that “as suggested above in the discussion of Ladas ... the doctrine of unenforceability of indefinite promises will likely eliminate many employment contract claims that would involve courts in the micromanagement of the workplace. The utility of this doctrine is further illustrated by [Rochlis]. ... In other words, courts will not enforce vague promises about the terms and conditions of employment that provide no definable standards for constraining an employer’s inherent authority to manage its enterprise. It is to be expected that many alleged employer promises will be unable to cross this threshold of definition to become enforceable contract claims.” (Scott, supra, 11 Cal.4th at pp. 472-473.)
The Scott court concluded, however, that the doctrine of unenforceability of indefinite promises did not bar an employee’s claim that Pacific Gas and *795 Electric Company had breached an implied contract not to demote its employees without good cause. The company’s written “discipline policies not only provided an implied good cause standard for demotion, but also a detailed set of rules and procedures for governing the imposition of discipline that further defined the meaning of that standard. These rules and procedures were sufficiently clear to permit a trier of fact to determine whether the company had complied with them.” (Scott, supra, 11 Cal.4th at p. 467.)
This court has applied the doctrine of unenforceability of indefinite promises as set forth in Ladas and Rochlis. In Bustamante v. Intuit, Inc. (2006) 141 Cal.App.4th 199, 201 [45 Cal.Rptr.3d 692] (Bustamante), the plaintiff claimed that the defendant software company had breached a contract to establish a joint venture to market software adapted for use in Mexico. This court concluded that “the undisputed facts here show no meeting of the minds as to the essential structure and operation of the alleged joint venture, even if there was agreement on some of the terms. ‘[T]he failure to reach a meeting of the minds on all material points prevents the formation of a contract even though the parties have orally agreed upon some of the terms, or have taken some action related to the contract.’ [Citation.]” (Id. at p. 215.)
In Barton v. Elexsys Internat., Inc. (1998) 62 Cal.App.4th 1182, 1189-1190 [73 Cal.Rptr.2d 212] (Barton), this court rejected the claim of a senior vice-president that his company’s chief executive officer (CEO) had made an enforceable oral promise that modified the senior vice-president’s compensation agreement to allow him the right to exercise certain stock options after his employment was terminated. The evidence showed that the CEO had only represented in general terms “that the key executives ‘had to be taken care of.’ [The plaintiff] did not ask [the CEO] what he meant by the phrase ‘taken care of,’ and he did not express his own subjective interpretation of these words (that key executives’ stock options would continue to vest and be exercisable throughout the period of salary protection).” (Id. at p. 1190.) Citing Rochlis, this court ruled that the CEO’s promise to take care of the key executives was “too vague and uncertain to support a claim that the parties’ written stock option agreements had been modified thereby. [Citation.]” (Ibid.)
Having determined the applicable law, I next consider the merits of plaintiffs’ contentions regarding defendants’ alleged retirement bonus promise.
3. Analysis
To determine whether defendants’ retirement bonus promise constitutes an enforceable contract, I believe we must apply the doctrine of the unenforceability of indefinite promises as instructed by the California Supreme Court in *796 Scott: “ ‘ “[AJlthough the terms of a contract need not be stated in the minutest detail, it is requisite to enforceability that it must evidence a meeting of the minds upon the essential features of the agreement, and that the scope of the duty and limits of acceptable performance be at least sufficiently defined to provide a rational basis for the assessment of damages. . . .” ’ [Citation.]” (Scott, supra, 11 Cal.4th at p. 467.)
Plaintiffs’ allegations in the amended complaint regarding the promise of a retirement bonus are essentially (1) defendants promised plaintiffs that if they continued to work for West Coast until the company was sold, they would receive a monetary bonus in an amount sufficient for them to retire and not have to work again; (2) plaintiffs “understood” that once the company was sold, defendants would determine the specific amount of plaintiffs’ retirement bonuses “by using information about the Plaintiffs’ debts and obligations, their lifestyles at that time and actuarial information sufficient to allow financial planners to set a specific amount for each of them given their specific circumstances at that time.” Following the direction of our Supreme Court, I construe these allegations strictly and presume that plaintiffs have stated as strong a case as they can regarding defendants’ obligation to pay them a retirement bonus. (Reynolds, supra, 36 Cal.4th at p. 1091.)
These allegations fail to show that the parties had a meeting of the minds on the essential features of the retirement bonus agreement. Plaintiffs do not allege that defendants agreed to a specific amount for any of the promised retirement bonuses nor do they allege that defendants agreed to, or even mentioned, a method for calculating the retirement bonuses. Plaintiffs merely allege their own one-sided “understanding” that financial planners would be employed to calculate their bonuses by using information supplied by plaintiffs about their debts, obligations, and lifestyles, as well as unspecified actuarial information. This allegation is insufficient because “[u]nder California law, the subjective, unexpressed beliefs of the parties do not serve as the basis for whether or not a contract is formed. Instead, the mutual assent necessary to form a contract is determined under an objective standard applied to the outward manifestations or expressions of the parties. [Citation.]” (Alexander v. Codemasters Group Limited (2002) 104 Cal.App.4th 129, 150 [127 Cal.Rptr.2d 145], disapproved on another ground in Reid v. Google, Inc. (2010) 50 Cal.4th 512, 524 [113 Cal.Rptr.3d 327, 235 P.3d 988].)
Absent allegations showing a meeting of the minds as to either the amount of the promised retirement bonuses or a method for calculating the bonuses, the scope of defendants’ duty to pay a retirement bonus and the limits of an acceptable performance have not been sufficiently defined to provide a rational basis for the assessment of damages. (Scott, supra, 11 Cal.4th at p. 467.) The amount required for any of the plaintiffs to retire and not have to *797 work again is obviously uncertain since the amount could vary tremendously without any agreed-upon method or standard by which the amount of the retirement bonus could be determined. (§ 1610[3]; see Bewick, supra, 26 Cal.2d at pp. 98-99 [option covenant providing for the appointment of third persons to ascertain the price was definite enough to give rise to a contract]; see also Larwin-Southem California, Inc. v. JGB Investment Co. (1979) 101 Cal.App.3d 626, 643 [162 Cal.Rptr. 52] [Cal. law recognizes that when a contract provides such an objective method for ascertaining the purchase price, the contract should not be construed as too indefinite to be enforced].)
Consequently, even though plaintiffs allegedly continued to work for West Coast in reliance upon the promise of a retirement bonus, under the doctrine of the unenforceability of indefinite promises the alleged retirement bonus promise is too indefinite to support an enforceable contract. (See Bustamante, supra, 141 Cal.App.4th at p. 215; Barton, supra, 62 Cal.App.4th at p. 1190.)
Plaintiffs’ argument that they entered into an enforceable unilateral contract is not convincing. In Scott, our Supreme Court noted that with regard to unilateral employment contracts, “ ‘[o]f late years the attitude of the courts (as well as of employers in general) is to consider [the employer’s practices and policies] which offer additional advantages to employees as being in effect offers of a unilateral contract which offer is accepted if the employee continues in the employment, and not as being mere offers of gifts.’ [Citations.]” (Scott, supra, 11 Cal.4th at p. 464; see Guz, supra, 24 Cal.4th at p. 344; Asmus v. Pacific Bell (2000) 23 Cal.4th 1, 10-11 [96 Cal.Rptr.2d 179, 999 P.2d 71] (Asmus))
Decisions applying the unilateral contract rule stated in Scott, Guz, and Asmus include, among others, Neisendorf v. Levi Strauss & Co. (2006) 143 Cal.App.4th 509, 522-523 [49 Cal.Rptr.3d 216] (Neisendorf) [specific bonus plan enforceable when employee begins service]; Newberger v. Rifkind (1972) 28 Cal.App.3d 1070, 1073-1075 [104 Cal.Rptr. 663] (Newberger) [written stock options agreement enforceable where employees continued to work in exchange for options grant]; and Chinn v. China Nat. Aviation Corp. (1955) 138 Cal.App.2d 98, 103 [291 P.2d 91] (Chinn) [employer’s definite plan of employee benefits constituted enforceable contract where employee continued in employment]. However, the decisions in Neisendorf, Newberger, and Chinn are distinguishable from the case at bar. In each case, the promise the employer made to the employee in exchange for the employee continuing to work was a promise of a specified benefit that, unlike file retirement bonus promise in the present case, was not vague or indefinite.
*798 Plaintiffs rely on the decisions in Sabatini, Hunter v. Ryan, and Hunter v. Sparling (1948) 87 Cal.App.2d 711 [197 P.2d 807], In Hunter v. Sparling, the promise of the employer, a Japanese bank, to pay the plaintiff employee “a ‘substantial,’ or a ‘large’ sum of money” upon his retirement was deemed an enforceable contract because even though the plaintiff did not know the formula for calculating the amount, that formula was ascertainable from the Japanese language rules and regulations available at the home office in Japan. (Hunter v. Sparling, supra, at pp. 718, 724-725.) The promise was therefore not too uncertain in its terms to be enforceable. (Id. at pp. 724-725.) In contrast, plaintiffs in the present case have not alleged that their retirement bonus could be calculated under a formula that could be ascertained from the company’s rules and regulations.
The decisions in Hunter v. Ryan and Sabatini are distinguishable because both decisions apply the doctrine of quantum meruit, which allows a party who has provided services for the benefit of another to recover the reasonable value of the services from the person who benefited from the services. (§ 1611[4]; see Palmer v. Gregg (1967) 65 Cal.2d 657, 660 [56 Cal.Rptr. 97, 422 P.2d 985]; see also Day v. Alta Bates Medical Center (2002) 98 Cal.App.4th 243, 249 [119 Cal.Rptr.2d 606].)
In Hunter v. Ryan the appellate court upheld a finding the plaintiff was owed a bonus of $2,000 as the reasonable value of services performed outside the services she performed for her weekly wages of $50, although the employer’s promise did not specify the amount of the bonus. (Hunter v. Ryan, supra, 109 Cal.App. at pp. 738-739.) The decision in Sabatini similarly concerned an employer’s promise to pay an employee a fixed salary and a bonus in an unspecified amount. (Sabatini, supra, 161 Cal.App.2d at p. 175.) The appellate court stated: “If the agreement does not specify the amount to be paid, the law will imply an agreement to pay the reasonable value of the services and will permit recovery of the excess of such amount over the salary paid.” (Id. at p. 176.)
In this case, however, the first amended complaint may not be construed to seek recovery under the doctrine of quantum meruit because the record reflects that plaintiffs declined the trial court’s invitation to amend the complaint to include quantum meruit allegations. In its order of February 9, 2011, the trial court stated: “The promised retirement bonus is too indefinite to be enforced, but plaintiffs shall have leave to amend to seek quantum meruit.” The trial court subsequently stated in the judgment that “[o]n *799 February 11, 2011, plaintiffs advised defendants that they would not be further amending the complaint.”
For these reasons, I would find that the trial court in its order of February 9, 2011, properly sustained the demurrer to the cause of action for breach of contract in the amended complaint. However, I agree with the trial court that plaintiffs were not precluded from seeking leave to amend their first amended complaint to seek recovery under the doctrine of quantum meruit.
D. Misrepresentation-concealment
1. The Parties’ Contentions
Plaintiffs argue that the amended complaint states facts sufficient for the cause of action for misrepresentation-concealment because they alleged that defendants “concealed from them that Defendants induced Plaintiffs to remain employed at West Coast in order to make the company more attractive to potential buyers while concealing from the Plaintiffs that they only intended to give Plaintiffs nominal bonuses if any at all.”
Defendants respond that the vague and uncertain allegations regarding the promise of a retirement bonus are fatal to the cause of action for misrepresentation-concealment, relying on the statement in Rochlis, supra, 19 Cal.App.4th at page 216 that “[promises too vague to be enforced will not support a fraud claim any more than they will one in contract.”
2. Applicable Law
This court has stated that “[concealment is a species of fraud or deceit. (See . . . §§ 1710, subd. 3,[5] 1572, subd. 3; [citation].)” (Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC (2008) 162 Cal.App.4th 858, 868 [76 Cal.Rptr.3d 325]; see Marketing West, Inc. v. Sanyo Fisher (USA) Corp. (1992) 6 Cal.App.4th 603, 613 [7 Cal.Rptr.2d 859].) I understand plaintiffs to be attempting to state a cause of action for a particular type of fraud known as promissory fraud.
The California Supreme Court has instructed that “ ‘[promissory fraud’ is a subspecies of the action for fraud and deceit. A promise to do something *800 necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud. [Citations.]” (Lazar v. Superior Court (1996) 12 Cal.4th 631, 638 [49 Cal.Rptr.2d 377, 909 P.2d 981] (Lazar); see Tarmann v. State Farm Mut. Auto. Ins. Co. (1991) 2 Cal.App.4th 153, 158-159 [2 Cal.Rptr.2d 861] (Tarmann) [broken promise of future action may be actionable].)
In evaluating the sufficiency of promissory fraud allegations, the court applies the following rule: “In California, fraud must be pled specifically; general and conclusory allegations do not suffice. [Citations.] ‘Thus “ ‘the policy of liberal construction of the pleadings . . . will not ordinarily be invoked to sustain a pleading defective in any material respect.’ ” [Citation.] [][] This particularity requirement necessitates pleading facts which “show how, when, where, to whom, and by what means the representations were tendered.” ’ [Citation.]” (Lazar, supra, 12 Cal.4th at p. 645; see Small v. Fritz Companies, Inc. (2003) 30 Cal.4th 167, 184 [132 Cal.Rptr.2d 490, 65 P.3d 1255].)
“The specificity requirement serves two purposes. The first is notice to the defendant, to ‘furnish the defendant with certain definite charges which can be intelligently met.’ [Citations.] The pleading of fraud, however, is also the last remaining habitat of the common law notion that a complaint should be sufficiently specific that the court can weed out nonmeritorious actions on the basis of the pleadings. Thus the pleading should be sufficient ‘ “to enable the court to determine whether, on the facts pleaded, there is any foundation, prima facie at least, for the charge of fraud.” ’ [Citations.]” (Committee on Children’s Television, Inc. v. General Foods Corp. (1983) 35 Cal.3d 197, 216-217 [197 Cal.Rptr. 783, 673 P.2d 660].)
The requirement of specific pleading applies to the damages element of a fraud cause of action, as this court has previously stated: “In order to recover for fraud, as in any other tort, the plaintiff must plead and prove the ‘detriment proximately caused’ by the defendant’s tortious conduct. (. . . § 3333.) Deception without resulting loss is not actionable fraud. [Citation.] ‘Whatever form it takes, the injury or damage must not only be distinctly alleged but its causal connection with the reliance on the representations must be shown.’ [Citation.]” (Service by Medallion, Inc. v. Clorox Co. (1996) 44 Cal.App.4th 1807, 1818 [52 Cal.Rptr.2d 650] (Service by Medallion).)
3. Analysis
In the amended complaint at issue here, the damages allegations included in the cause of action for misrepresentation-concealment are as follows. “As a direct and proximate result of the concealment, failure to inform and representations of Defendants, Plaintiffs have: [][] A. Been damaged in an amount *801 equal to the monies which would have allowed them to retire and stop working when West Coast was sold; []Q B. Sustained damages in the form of missed opportunities for other employment and residence opportunities; [f] C. Sustained damages in the form of uncompensated time for work and travel over and above normal in continuing to advance the profitability of West Coast and take over the duties and responsibilities of managers and key employees who had left West Coast; [f] D. Sustained damages in the form of emotional distress and mental anguish. H] The exact amount of the aforesaid damages is not yet fully ascertained but is within the jurisdictional limits of this Court and will be established according to proof at the time of trial.”
Defendants contend that these damage allegations are insufficient, relying on the statement in Nagy v. Nagy (1989) 210 Cal.App.3d 1262, 1268-1269 [258 Cal.Rptr. 787] that “[a]n allegation of a definite amount of damage is essential to stating a cause of action. [Citation.]” I note that another appellate court has disagreed, stating that “the specific dollar amount is necessary only when a default judgment is to be entered.” (Furia v. Helm (2003) 111 Cal.App.4th 945, 957 [4 Cal.Rptr.3d 357].) However, it is not necessary to resolve the issue of whether a specific dollar amount of damages must be alleged in a fraud action, since it may be determined on other grounds that the damages allegations in the amended complaint are inadequate. (See Lazar, supra, 12 Cal.4th at p. 645.)
First, as I have discussed, the allegations regarding the promised retirement bonuses are too indefinite in the absence of a meeting of the minds as to either the amount of the bonuses or the method of calculating the amount of the bonuses. Second, the three plaintiffs fail to allege with any specificity the damages that each of them allegedly suffered due to relying on defendants’ retirement bonus promise. Plaintiffs allege only in general terms that they all missed “other employment and residence opportunities,” suffered “uncompensated time for work and travel” and “[sustained damages in the form of emotional distress and mental anguish.” These conclusory allegations do not satisfy the general requirement that a cause of action for fraud must be pleaded specifically (Lazar, supra, 12 Cal.4th at p. 645) and the specific requirement that damages be distinctly alleged. (Service by Medallion, supra, 44 Cal.App.4th at p. 1818.)
I would therefore find that the trial court did not err in sustaining the demurrer to the cause of action for misrepresentation-concealment in its order of February 9, 2011.
*802 E. Promissory Estoppel
1. The Parties’Contentions
Plaintiffs contend that the allegations of the amended complaint were sufficient for a promissory estoppel cause of action because they properly alleged the elements of a clear promise, reliance, substantial detriment, and damages.
According to defendants, the allegations are insufficient because the alleged promise of an unspecified retirement bonus does not constitute the clear and unambiguous promise that is necessary for a promissory estoppel cause of action.
2. Applicable Law
The California Supreme Court has stated, “Promissory estoppel is ‘a doctrine which employs equitable principles to satisfy the requirement that consideration must be given in exchange for the promise sought to be enforced.’ [Citation.]” (Kajima/Ray Wilson v. Los Angeles County Metropolitan Transportation Authority (2000) 23 Cal.4th 305, 310 [96 Cal.Rptr.2d 747, 1 P.3d 63] (Kajima/Ray).) The doctrine therefore serves as a substitute for consideration. (Youngman v. Nevada Irrigation Dist. (1969) 70 Cal.2d 240, 250 [74 Cal.Rptr. 398, 449 P.2d 462].)
Under the doctrine of promissory estoppel, “ ‘[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.’ [Citations.]” (Kajima/Ray, supra, 23 Cal.4th at p. 310.)
“The party claiming [promissory] estoppel must specifically plead all facts relied on to establish its elements. [Citations.]” (Smith v. City and County of San Francisco (1990) 225 Cal.App.3d 38, 48 [275 Cal.Rptr. 17].) Thus, it is well established that the alleged promise must be “ ‘clear and unambiguous,’ ” or the promise is not binding. (Cotta v. City and County of San Francisco (2007) 157 Cal.App.4th 1550, 1566 [69 Cal.Rptr.3d 612]; see US Ecology, Inc. v. State of California (2005) 129 Cal.App.4th 887, 905 [28 Cal.Rptr.3d 894]; Lange v. TIG Ins. Co. (1998) 68 Cal.App.4th 1179, 1185 [81 Cal.Rptr.2d 39]; Laks v. Coast Fed. Sav. & Loan Assn. (1976) 60 Cal.App.3d 885, 890 [131 Cal.Rptr. 836] [promise must be clear and unambiguous in its terms].)
*803 3. Analysis
In the present case, the alleged promise of bonuses in an amount sufficient for plaintiffs to retire and not work again is not a clear and unambiguous promise. As I have discussed, the retirement bonus promise is indefinite as to either the amount of the bonus or the method of calculating the bonus. The amended complaint therefore does not sufficiently allege the clear promise element of a cause of action for promissory estoppel.
Accordingly, I would find that in its order of February 9, 2011, the trial court properly sustained defendants’ demurrers to the cause of action for promissory estoppel.
F. Negligent Misrepresentation
1. The Parties’ Contentions
Plaintiffs contend that the trial court erred in sustaining the demurrers to the cause of action for negligent misrepresentation in the amended complaint on the ground that the alleged promise of a retirement bonus is “too vague to support a fraud claim.”
According to defendants, the trial court did not err because a cause of action for negligent misrepresentation cannot be based upon “a promise that was too vague to be enforceable.”
2. Applicable Law
A cause of action for negligent misrepresentation is similar to a cause of action for fraud, with one key difference. “The elements of fraud are (1) the defendant made a false representation as to a past or existing material fact; (2) the defendant knew the representation was false at the time it was made; (3) in making the representation, the defendant intended to deceive the plaintiff; (4) the plaintiff justifiably relied on the representation; and (5) the plaintiff suffered resulting damages. [Citation.] The elements of negligent misrepresentation are the same except for the second element, which for negligent misrepresentation is the defendant made the representation without reasonable ground for believing it to be true. [Citations.]” (West v. JPMorgan Chase Bank, N.A. (2013) 214 Cal.App.4th 780, 792 [154 Cal.Rptr.3d 285].)
This court has explained that “an action based on a false promise is simply a type of intentional misrepresentation, i.e., actual fraud. The specific intent requirement [for fraud] also precludes pleading a false promise claim as a negligent misrepresentation, i.e., ‘The assertion, as a fact, of that which is not *804 trae, by one who has no reasonable ground for believing it to be true.’ (. . . § 1710, subd. (2).) Simply put, making a promise with an honest but unreasonable intent to perform is wholly different from making one with no intent to perform and, therefore, does not constitute a false promise. Moreover, we decline to establish a new type of actionable deceit: the negligent false promise.” (Tarmann, supra, 2 Cal.App.4th at p. 159, fn. omitted.)
3. Analysis
In the present case, plaintiffs allege in their cause of action for negligent misrepresentation that “Defendants were aware that the promises and representations made to Plaintiffs were not accurate in light of information they had in hand at that time as alleged hereinabove. Defendants also undertook to conceal from Plaintiffs their lack of information and failure to make the promises and representations accurately, [f] . . . The promises and representations by Defendants as aforesaid were made with the intent to induce Plaintiffs to act as set forth hereinabove.”
Plaintiffs’ allegations show that their cause of action for negligent misrepresentation does not actually plead that claim, since they do not allege that defendants made a promise with an honest but unreasonable intent to perform. (See Tarmann, supra, 2 Cal.App.4th at p. 159.) Instead, plaintiffs allege that defendants had no intention of performing by providing the promised retirement bonus. They have therefore attempted to state a cause of action for an intentional tort, since “an action based on a false promise is simply a type of intentional misrepresentation, i.e., actual fraud.” (Ibid.)
I therefore concur with the majority’s determination that the trial court properly sustained the demurrer to the cause of action for negligent misrepresentation in its order of February 9, 2011.
G. Intentional Infliction of Emotional Distress
1. The Parties’ Contentions
Plaintiffs argue that the trial court incorrectly sustained the demurrers to the cause of action for intentional infliction of emotional distress in the amended complaint. According to plaintiffs, they sufficiently alleged that defendants’ conduct was outrageous by claiming that defendants “virtually enslaved the Plaintiffs for 5 years by inducing the Plaintiffs to give up their *805 freedom including their rights to go to a company which paid more, which had better benefits, which had a retirement plan and to forego moving to better locations where better schools existed or better housing.” Plaintiffs also claim that defendants “took away [their] right to work where they wanted.”
Defendants maintain that plaintiffs fail to state facts sufficient for a cause of action for intentional infliction of emotional distress because they do not allege extreme and outrageous conduct by defendants. In defendants’ view, plaintiffs “allege nothing more than [defendants’] failure to pay allegedly promised compensation in an uncertain amount.”
2. Applicable Law
The California Supreme Court has established the elements of a cause of action for intentional infliction of emotional distress: “ ‘ “(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff’s suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant’s outrageous conduct. . . .” Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community.’ [Citation.]” (Christensen v. Superior Court (1991) 54 Cal.3d 868, 903 [2 Cal.Rptr.2d 79, 820 P.2d 181] (Christensen).)
Our Supreme Court clarified in Christensen that “ 1 “the rule which seems to have emerged is that there is liability for conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind.” [Citations.]’ ” (Christensen, supra, 54 Cal.3d at pp. 904-905.) The court may determine in the first instance whether the defendant’s conduct may be reasonably regarded as so extreme and outrageous as to permit recovery for intentional infliction of emotional distress. (Fowler v. Varian Associates, Inc. (1987) 196 Cal.App.3d 34, 44 [241 Cal.Rptr. 539].)
In the employment context, our Supreme Court determined in Alcorn v. Anbro Engineering, Inc. (1970) 2 Cal.3d 493 [86 Cal.Rptr. 88, 468 P.2d 216], that the plaintiff employee had stated facts sufficient for a cause of action for intentional infliction of emotional distress by alleging that the defendant employer had “intentionally humiliated plaintiff, insulted his race, ignored his union status, and terminated his employment, all without just cause or provocation.” (Id. at pp. 498-499, fn. omitted.)
*806 In contrast, the allegations were insufficient for a cause of action for intentional infliction of emotional distress where the plaintiff employee claimed that the defendant employer first offered her a termination package, withdrew the offer the next day and told her she was still employed, and subsequently offered a less advantageous termination package while forcing her to do work she regarded as menial during her last 30 days of employment. (Trerice, supra, 209 Cal.App.3d at p. 884.) The appellate court stated, “While [defendants’] conduct is not exemplary, it certainly does not qualify as the kind of ‘outrageous’ conduct necessary in order to support an action for intentional infliction of emotional distress. [Citation.]” (Ibid.)
3. Analysis
The result in the present case is similar to the result in Trerice. Defendants’ alleged conduct of making a false promise to pay a retirement bonus does not qualify as exemplary conduct by an employer. But such conduct does not reach the level of extreme and outrageous conduct that is necessary for a cause of action for intentional infliction of emotional distress. “[I]t is ‘not. . . enough that the defendant has acted with an intent which is tortious or even criminal, or that he [or she] has intended to inflict emotional distress, or even that his [or her] conduct has been characterized by “malice,” or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.’ [Citation.]” (Cochran v. Cochran (1998) 65 Cal.App.4th 488, 496 [76 Cal.Rptr.2d 540] (Cochran).)
Here, plaintiffs essentially allege that they continued their employment in reliance upon the vague promise of an unspecified retirement bonus, which defendant employer did not fulfill. As a matter of law, these allegations do not show that defendants’ conduct was so extreme and outrageous as to exceed “ ‘ “all bounds usually tolerated by decent society . . . ” (Christensen, supra, 54 Cal.3d at p. 905; see Cochran, supra, 65 Cal.App.4th at p. 496.) The allegations in the amended complaint are therefore insufficient to state a cause of action for intentional infliction of emotional distress.
For these reasons, I concur with the majority’s determination that the trial court did not err, in its order of February 9, 2011, in sustaining the demurrers to the cause of action for intentional infliction of emotional distress.
*807 H. Estoppel in Pais
1. The Parties’ Contentions
Finally, plaintiffs challenge that portion of the trial court’s order of September 7, 2010, sustaining the demurrer to the cause of action for estoppel in pais without leave to amend because plaintiffs had not shown that estoppel in pais is a recognized cause of action in California.
Relying on the decision in Hill v. Kaiser Aetna (1982) 130 Cal.App.3d 188 [181 Cal.Rptr. 564] (Hill), plaintiffs contend that the trial court erred because estoppel in pais is a legal theory on which a plaintiff employee’s entitlement to a bonus may be based.
Defendant West Coast disputes this contention, arguing that estoppel in pais is a defensive doctrine, not an independent cause of action. Defendants Maloney and Tkalcevic add the argument that estoppel in pais is an evidentiary doctrine codified at Evidence Code section 623.[6]
2. Applicable Law
My resolution of the issue is guided by well-established rules. “Equitable estoppel, originally known as estoppel in pais, and also called estoppel by conduct, is simply stated. ‘Whenever a party has, by his [or her] own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he [or she] is not, in any litigation arising out of such statement or conduct, permitted to contradict it.’ (Evid. Code, § 623; [citation].) The doctrine is defensive in nature only, and ‘operates to prevent one [party] from taking an unfair advantage of another.’ [Citation.]” (San Diego Mun. Credit Union v. Smith (1986) 176 Cal.App.3d 919, 922-923 [222 Cal.Rptr. 467] (San Diego Mun. Credit Union); see Behnke v. State Farm General Ins. Co. (2011) 196 Cal.App.4th 1443, 1463 [127 Cal.Rptr.3d 372] [equitable estoppel doctrine acts defensively only]; Joffe v. City of Huntington Park (2011) 201 Cal.App.4th 492, 512-513, fn. 15 [134 Cal.Rptr.3d 868] [no stand-alone cause of action for equitable estoppel as a matter of law].)
For example, it has been held that the doctrine of equitable estoppel may be applied, after the limitations period has run, to preclude a defendant from asserting the statute of limitations as a defense to an untimely action where *808 the defendant’s conduct induced the plaintiff into forbearing to file suit. (McMackin v. Ehrheart (2011) 194 Cal.App.4th 128, 142 [122 Cal.Rptr.3d 902].)
3. Analysis
In accordance with these well-established rules, as a matter of law plaintiffs may not state a cause of action for estoppel in pais since estoppel in pais, also known as equitable estoppel and estoppel by conduct, is not an independent cause of action. (San Diego Mun. Credit Union, supra, 176 Cal.App.3d at pp. 922-923.)
The decisions on which plaintiffs rely are distinguishable and do not convince me that estoppel in pais may be asserted as an independent cause of action. In Division of Labor Law Enforcement v. Transpacific Transportation Co. (1979) 88 Cal.App.3d 823, 828-829 [152 Cal.Rptr. 98], the appellate court ruled that the allegations of the plaintiff’s amended complaint were sufficient to raise “the theory of estoppel by conduct.” The court did not consider the issue of whether estoppel by conduct constituted an independent cause of action.
In Hill, supra, 130 Cal.App.3d at page 191, the appellate court concluded that “estoppel by conduct is a proper theory upon which to find entitlement for a bonus.” That case arose from the state Labor Commissioner’s denial of the plaintiff employee’s claim for severance pay and a bonus. The denial was appealed to the superior court, which ruled that the defendant employer was estopped by its conduct from denying the plaintiff employee a bonus. The appellate court determined that sufficient evidence supported the trial court’s finding. (Id. at pp. 190, 196-197.) The court did not address the issue of whether estoppel by conduct may constitute an independent cause of action in a civil complaint.
For these reasons, I concur with the majority’s determination that the trial court, in its order of September 7, 2010, properly sustained the demurrer to the cause of action for estoppel in pais in the original complaint.
III. Conclusion
Since I conclude that the trial court properly sustained the demurrers to all five causes of action in the first amended complaint, and also properly sustained the demurrer to the cause of action for estoppel in pais in the original complaint, I would affirm the trial court’s February 15, 2011 judgment dismissing the entire action with prejudice after plaintiffs elected not to further amend their first amended complaint. And as I previously *809 stated, I agree with the trial court that plaintiffs were not precluded from seeking leave from the trial court to amend their first amended complaint to seek recovery under the doctrine of quantum meruit.
A petition for a rehearing was denied November 22, 2013. Bamattre-Manoukian, J., was of the opinion that the petition should be granted. Respondents’ petition for review by the Supreme Court was denied March 12, 2014, S215578.

 All further statutory references are to the Civil Code unless otherwise indicated.

 Code of Civil Procedure section 581, subdivision (f)(2) provides, “The court may dismiss the complaint as to that defendant when .. . [][] .. . [f ] ... after a demurrer to the complaint is sustained with leave to amend, the plaintiff fails to amend it within the time allowed by the court and either party moves for dismissal.”

 Section 1610 provides, “When a consideration is executory, it is not indispensable that the contract should specify its amount or the means of ascertaining it. It may be left to the decision of a third person, or regulated by any specified standard.”

 Section 1611 provides, “When a contract does not determine the amount of the consideration, nor the method by which it is to be ascertained, or when it leaves the amount thereof to the discretion of an interested party, the consideration must be so much money as the object of the contract is reasonably worth.”

 Section 1710 provides, “A deceit, within the meaning of the last section, is either: [][] 1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true; [f] 2. The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true; [(j[] 3. The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or, PJ[] 4. A promise, made without any intention of performing it.”

Evidence Code section 623 provides, “Whenever a party has, by his own statement.or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it.”